[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/17/99
THOMAS K. KAHN
CLERK

_____

No. 98-4381

_____

D. C. Docket No. 96-920-CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MERLY GALLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 17, 1999)**

Before ANDERSON, Chief Judge, MARCUS, Circuit Judge, and MILLS*, Senior
District Judge.

_____

*Honorable Richard Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by
designation.

MARCUS, Circuit Judge:

Merly Gallo appeals her 92-month sentence for conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The sole issue she raises on appeal concerns whether the district court properly enhanced her sentence two points for possession of a firearm by her co-conspirators under § 2D1.1(b)(1) of the United States Sentencing Guidelines. Because we hold that a § 2D1.1(b)(1) enhancement requires a factual finding of reasonable foreseeability, we vacate Defendant's sentence, and remand to the district court to determine whether Gallo could reasonably foresee that her co-conspirators would possess firearms in furtherance of a jointly undertaken narcotics transaction.

I.

On April 29, 1997, Defendant Gallo and four co-conspirators (Blanco, Gordon, Diaz, and Gomez) pled guilty to conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. Among other things, the evidence showed that Gallo participated in a narcotics transaction on November 7, 1996 at the apartment of her co-conspirator Gomez. At eleven-thirty that morning, Gallo and Diaz arrived at Gomez's apartment. Two hours later, Blanco and Gordon arrived with seven kilos of cocaine. Each man also came armed with a pistol tucked in his waistband. An informant, Maria Nunez, then arrived at Gomez's

2

apartment and was let in by Gallo.  Nunez inspected the cocaine in front of Gallo

and her co-conspirators.  Gallo then left with Nunez and was subsequently arrested.

At her sentencing, on January 30, 1998, Gallo received a two-point sentence

enhancement under U.S.S.G. § 2D1.1(b)(1) based on the fact that two of her co-

conspirators (Gordon and Blanco) possessed firearms during the course of the

narcotics conspiracy.  In awarding the enhancement, the district court exclusively

relied on commentary to § 2D1.1 which states:

> The enhancement for weapon possession reflects the
> increased danger of violence when drug traffickers
> possess weapons.  The adjustment should be applied if
> the weapon was present, <u>unless it is clearly improbable
> that the weapon was connected with the offense</u>.

U.S.S.G. § 2D1.1, comment. (n.3) (emphasis added).  The district court did not

consider the relevance of U.S.S.G. § 1B1.3(a)(1)(b) which  outlines the

requirements for sentence enhancements based on co-conspirator conduct.  Neither

the United States nor the Defendant made any reference to the Guideline at

Defendant's sentencing colloquy.  This  provision unambiguously limits

enhancements, "in the case of a jointly undertaken criminal activity  . . . [to] all

<u>reasonably forseeable</u> acts and omissions of others in furtherance of the jointly

undertaken criminal activity."  <u>Id.</u> (emphasis added).  However, the Defendant did

3

argue that a "reasonable foreseeability" finding was required for § 2D1.1 enhancements for co-conspirator conduct, citing instead to United States v. Vold, 66 F.3d 915 (7th Cir. 1995) (requiring a reasonable foreseeability finding, in conjunction with § 1B1.3(a)(1)(b), for § 2D1.1(b)(1) firearms possession enhancements based on co-conspirator conduct).

The United States countered that § 2D1.1(b)(1) did not require reasonable foreseeability, and that, in any event, Gallo could reasonably have foreseen her co-conspirators' firearms possession. The district court ordered the § 2D1.1(b)(1) enhancement finding only that it was not clearly improbable that the weapons possessed by Blanco and Gordon were connected with the offense, while refusing to make an alternative finding that the co-conspirators' possession was or was not reasonably foreseeable.[1]

---

[1]The sentencing colloquy makes clear that the district judge chose not to make a finding of reasonable foreseeability despite a request from both the defense and the government.

> The Court: Now, defendant objects here on the basis that Ms. Gallo did not possess a firearm nor was it reasonably foreseeable that her co-conspirators Mr. Gordon and Mr. Blanco would show up with a firearm.
>
> . . .
>
> The Court: Very well. I am going to make my findings. And I think it will present a very clear

4

question to the 11th Circuit, which is that I find that under application note 3 under section 2D1.1 of the guidelines manual I cannot find that it is clearly improbable that the weapons used by Gordon and Blanco are connected with the offense . . . However, if the 11th Circuit wants to hold that we must follow, ignore the sentencing guideline, and follow the 7th circuit on reasonably foreseeable, so be it. . . .

Government:      Your honor, if I could ask the court to consider, if this issue did go up, whether it would be reasonably foreseeable because the government is taking the position that in this case it would have been reasonably foreseeable for this and any other defendant involved in this conspiracy to believe that weapons would be possessed. . . . It was based on the fact that this defendant was present at the home of Maria Nunez with Defendant Gallo when individuals came banging on the door, attempted forced entry into the home to receive payment for the two kilos that were ripped off. Clearly these individuals had reason to fear for their lives. . . .

The Court:   That is fine. That might have been reason for Ms. Diaz and Ms. Gallo to have a weapon. But it really doesn't supply the probability that somebody else is going to bring the weapons in along with the cocaine to protect themselves during the transaction or the cocaine during the transaction. And I understand that the government is urging me to do to cover so I would come out with the same result whichever route I followed, either application

5

II.

We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1)
for clear error, and the application of the Sentencing Guidelines to those facts <u>de
novo</u>. <u>See</u> <u>United States v. Hall</u>, 46 F.3d 62, 63 (11th Cir. 1995) (citing <u>United
States v. Herrera</u>, 931 F.2d 761, 762 (11th Cir.1991)).

To begin, § 2D1.1(b)(1) of the Sentencing Guidelines, which sets out
specific offense characteristics pertaining to drug offenses, provides for a two-level
increase in  base offense level "[i]f a dangerous weapon (including a firearm) was
possessed . . . ." <u>Id.</u>  The commentary to that section also provides that "[t]he
adjustment should be applied if the weapon was present, unless it was clearly
improbable that the weapon was connected with the offense."  U.S.S.G. 2D1.1,
comment. (n.3).  In this case, Gallo does not contest the district court's application
of note 3 of the commentary to 2D1.1.  Indeed, it is plain from the record that the
firearm was directly connected to the drug-trafficking offense.  However, this does
not end our inquiry.  Gallo did not actually possess the firearms in question.
Instead, the firearms were possessed by two of her co-conspirators.

note 3 or the reasonably foreseeable doctrine.  I cannot do that.  So
the case is squarely presented, I think, to the 11th Circuit.

6

U.S.S.G. § 1B1.3(a)(1)(b) outlines the requirements for sentence enhancements based on co-conspirator conduct. The Guideline instructs that an act may be imputed from one co-conspirator to another provided the conduct was (1) "reasonably foreseeable," and (2) "in furtherance of the jointly undertaken criminal activity. . . ." Id. The Guidelines are promulgated by the United States Sentencing Commission, pursuant to the Sentencing Reform Act of 1984, as amended, §18 U.S.C. 3551 et seq., §§ 28 U.S.C. 991-998, and have the binding force of a legislative enactment. See Williams v. United States, 503 U.S. 193, 200-01 (1992). In addition, the commentary for § 1B1.3(a)(1)(b) reads:

> [I]n the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was both:
>
> (i) in furtherance of the jointly undertaken criminal activity; and
>
> (ii) reasonably foreseeable in connection with that criminal activity.

Id. at comment. (n.2). (emphasis added). Guideline commentary "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation'" it interprets or contrary to federal law. Stinson v. United States, 508 U.S. 36, 45 (1993) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). In short, both § 1B1.3(a)(1)(b) and its commentary unambiguously

7

direct that sentence enhancements for co-conspirator conduct will be limited to those acts which are reasonably foreseeable.

Therefore, the central question squarely presented is whether a § 2D1.1(b)(1) firearms enhancement based on a co-conspirator's firearms possession requires that the conduct be reasonably foreseeable by a defendant.

Our first foray into this issue occurred in United States Otero, 890 F.2d 366 (11th Cir. 1989), a short per curiam opinion.  There, we simply outlined a three-part test for § 2D1.1(b)(1) sentence enhancements based on co-conspirator conduct:

> Sentence enhancement for a co-conspirator's firearms possession is proper if three conditions are met: first, the possessor must be charged as a co-conspirator; second, the co-conspirator must be found to have been possessing a firearm in furtherance of the conspiracy; and third, the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearms possession.

Otero, 890 F.2d at 367.[2]  The Otero test does not explicitly reference any requirement that the co-conspirator's possession be foreseeable to the defendant. However, in articulating this test, the Otero court cited to United States v. Missick,

_____

[2]The government bears the burden of proving the appropriateness of a sentence enhancement under the Otero regime.  See United States v. Gates, 967 F.2d 497, 500-01 (11th Cir. 1992) (citing U.S. v. Wilson, 884 F.2d 1355, 1356 (11th Cir.1989)).

875 F.2d 1294, 1301-02 (7th Cir. 1989) and <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946). <u>Missick</u> laid out a similar three-part test for § 2D1.1(b)(1), explaining that "Missick may still have been properly subject to an enhanced sentence based on the possession of firearms by Whisner and Fluhr without individually possessing a firearm under the theory of co-conspirator liability established in <u>Pinkerton</u>. . . ." <u>Missick</u>, 875 F.2d at 1301. And in <u>Pinkerton</u>, the Supreme Court elucidated the classic theory of co-conspirator liability. Notably, the <u>Pinkerton</u> rationale discussed the same three elements established in <u>Otero</u> and <u>Missick</u>, <u>see</u> <u>Pinkerton</u>, 328 U.S. at 642-47, but then plainly instructed that co-conspirator liability cannot be found "if the substantive offense committed . . . was merely a part of the ramifications of the plan <u>which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement</u>." <u>Pinkerton</u>, 328 U.S. at 647-48 (emphasis added).

At oral argument, the United States suggested that the <u>Otero</u> test does not require a reasonable foreseeability finding, even if the Defendant could establish that the co-conspirators' conduct was not reasonably foreseeable to her.[3] Rather, the government argued, <u>Otero</u> requires <u>only</u> that the government prove by a

_____

[3]This argument cannot easily be squared with the United States' brief which contends that a reasonable foreseeability requirement is "built-in" to the <u>Otero</u> analysis.

preponderance of the evidence that the firearm possessor was a co-conspirator, that the possession was in furtherance of the conspiracy, and finally, that the Defendant was a member of the conspiracy at the time of possession. We disagree. We read Otero to be consonant with the traditional theory of co-conspirator liability requiring reasonable foreseeability,

first outlined in Pinkerton and later promulgated in U.S.S.G. § 1B1.3(a)(1)(b). Our conclusion is supported by the overwhelming authority of our caselaw which consistently has read Otero to require reasonable foreseeability.

We first revisited Otero in United States v. Martinez, 924 F.2d 209 (11th Cir. 1992). There, we clarified that Otero "is fully in accord with the Guidelines and the commentary to § 1B1.3(a)(1). Otero follows the Pinkerton rationale, which, like the Guidelines, requires that the firearm possession 'be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.'" Martinez, 924 F.2d at 210 n.1 (citing Pinkerton, 328 U.S. at 648)). Then in Freyre-Lazaro, in Pessefall, and again in Green, we applied the Otero test and specifically determined that the co-conspirator conduct was "reasonably foreseeable" despite defendants' claims that they lacked actual knowledge of the possession. United States v. Freyre-Lazaro, 3 F.3d 1496, 1506 (11th Cir. 1993); United States v. Pessefall, 27 F.3d 511, 514-15 (11th Cir. 1994); United States v. Green, 40 F.3d

10

1167, 1175 (11th Cir. 1994). Later, in Aduwo, we noted that a defendant may be awarded a firearms possession enhancement for co-conspirator conduct under Otero because of the "basic [Pinkerton] rule that conspirators are liable for the reasonably foreseeable acts of their co-conspirators in furtherance of the conspiracy." United States v. Aduwo, 64 F.3d 626, 629 (11th Cir. 1995). We reiterated this proposition in United States v. Luiz, 102 F.3d 466, 468 (11th Cir. 1996) (stating that the "rationale [under Otero] for attributing the possession of a firearm by one co-conspirator to another is the Pinkerton rule that 'conspirators are liable for the reasonably foreseeable acts of their co-conspirators in furtherance of the conspiracy'") (citing Aduwo, 64 F.3d at 629). Finally, in Alred, we explained that while "[a]ctual knowledge of the coconspirator's firearm possession by the convicted defendant is not required [under Otero] . . ., possession must be reasonably foreseeable." United States v. Alred, 144 F.3d 1405, 1420 (11th Cir. 1998).

However, our research also reveals that several cases have applied the Otero test without any discussion of reasonable foreseeability. See United States v. Matthews, 168 F.3d 1234, 1248 (11th Cir. 1999); United States v. Delgado, 56 F.3d 1357, 1372 (11th Cir. 1995); United States v. Reid, 69 F.3d 1109, 1115 (11th Cir. 1995); United States v. Stanley, 24 F.3d 1314, 1322-23 (11th Cir. 1994);

11

United States v. Gates, 967 F.2d 497, 500 (1992).  As best we can tell, only one of these cases, Gates, involved a defendant who made a state of mind defense to his § 2D1.1(b)(1) firearms enhancement.  See id., 967 F.2d 497, 500 (1992).  In Gates, the defendant argued he lacked actual knowledge of his co-conspirators' gun possession, and we concluded that the Otero test nevertheless was met.  See id. at 500.  The gun at issue was lodged under a driver's car seat in close proximity to Gates who was sitting in a rear passenger seat.  The issue of foreseeability was not argued by Gates directly, and the facts suggest that the possession was reasonably foreseeable.  See id. at 499.  In the remaining four cases, the issue of reasonable foreseeability was not germane to the Otero analysis because the defendants did not contest their knowledge of the co-conspirator conduct.   None of these cases hold or suggest in dicta that a reasonable forseeability finding is irrelevant under Otero.

But even if there is doubt that Otero requires a reasonable forseeability finding, it would not affect our conclusion today.  Notably, when Otero was decided, the reasonable foreseeability requirement appeared in note one of the commentary to U.S.S.G. § 1B1.3 but not in the direct text of the Guideline itself.  See U.S.S.G. § 1B1.3, comment. (n.1) (1989) (amended 1994). At the time Otero was decided, the Guidelines' commentary was considered precatory, not

12

mandatory, in our circuit and in the other federal circuits.  See United States v. Stinson, 957 F.2d 813, 813 (11th Cir. 1992) (per curiam) (interpreting the Guidelines' commentary as non-binding); United States v. Gaines, 964 F.2d 124, 126 (2d. Cir. 1992) (finding the Guidelines' policy statements to have less authority than the Guidelines themselves); United States v. Blackston, 940 F.2d 877, 893 (3d. Cir. 1991) (stating that the Guidelines' policy statements are merely "advisory"); United States v. Anderson, 942 F.2d 606, 609-14 (9th Cir. 1991) (en banc) (treating the Guidelines' commentary as something more than legislative history but something less than the Guidelines' text).

In 1993, however, the Supreme Court overruled Stinson and determined that the Guidelines' commentary was binding unless it was contrary to federal law or "plainly erroneous" in light of the Guidelines themselves.  Stinson, 508 U.S. at 37, 44-45.  Stinson therefore effectively required sentencing courts to apply the "reasonable foreseeability" commentary to § 1B1.3(a)(1)(b) when awarding an enhancement based on co-conspirator conduct.  Moreover, in 1994, the Sentencing Commission expressly amended the Guidelines to include the reasonable foreseeability requirement directly in § 1B1.3(a)(1)(b).  Compare U.S.S.G. § 1B1.3

13

(1989) <u>with</u> U.S.S.G. § 1B1.3(a)(1)(b) (1994).[4] This amendment, effective in

November 1994, gave the reasonable foreseeability requirement of §

_____

[4]Note one of the commentary to § 1B1.3 of the 1989 Guidelines states:

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.

<u>Id.</u>

§ 1B1.3 now reads:

> (a)    <u>Chapter Two (Offense Conduct) and Three (Adjustments)</u>.  Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base level offense, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1)
>
> (B)    In the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

<u>Id.</u> (1997).

1B1.3(a)(1)(b) the binding force of a legislative enactment.  See Williams, 503

U.S. at 200-01.

We conclude that each of these legal developments constitutes sufficient

change in the legal and statutory landscape to undermine any suggestion in Otero

that reasonable foreseeability is not required by U.S.S.G. § 2D1.1(b)(1).  As a rule,

our prior precedent is no longer binding once it has been substantially undermined

or overruled by either a change in statutory law or Supreme Court jurisprudence or

if it is in conflict with existing Supreme Court precedent.  See United States v.

Romeo, 122 F.3d 941, 942 n.1 (11th Cir. 1997) (determining that prior precedent

does not have to be followed by a panel where a "change in statutory law"

undermines the precedent) (citing United States v. Woodard, 938 F.2d 1255, 1258

n.4 (11th Cir. 1991))[5]; Lufkin v. McCallum, 956 F.2d 1104, 1107 (11th Cir. 1992)

_____

[5]We said in Woodard, a sentencing guideline case:

> Although several of our cases state the principle that
> "only" the en banc court or the Supreme Court can overrule
> a panel decision, in a situation such as this where our
> authority derives from Congress, we have no doubt that a
> clear change in the law by Congress could also justify a
> panel of this Court in not following an earlier panel's
> decision, where the prior panel's decision was based on
> legislation that had been changed or repealed.

Woodard, 938 F.2d at 1258 n.4 (emphasis added); see also Davis v. Estelle, 529 F.2d
437, 441 (5th Cir.1976) (stating that "one panel of this Court cannot disregard the

(declining to follow prior panel holding "in order to give full effect to an intervening decision of the Supreme Court") (citing United States v. Machado, 804 F.2d 1537, 1543 (11th Cir.1986)); Tucker v. Phyfer, 819 F.2d 1030, 1035 n. 7 (11th Cir. 1987) (declining to follow prior panel opinion that failed to consider controlling Supreme Court precedent). Thus, even if we were to read Otero, as the government suggests, as eviscerating a reasonable foreseeability requirement for U.S.S.G. § 2D1.1(b)(1), that holding would be in square conflict with both the Supreme Court's decision in Stinson and the plain language of U.S.S.G. § 1B1.3(a)(1)(b) subsequently adopted by the Sentencing Commission.

For these reasons, we hold that for a § 2D1.1(b)(1) firearms enhancement for co-conspirator possession to be applied to a convicted defendant, the government must prove by a preponderance of the evidence: (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of

---

precedent set by a prior panel, even though it conceives error in the precedent. Absent an overriding Supreme Court decision or a change in the statutory law, only the Court en banc can do this.").

possession, <u>and</u> (4) the co-conspirator possession was reasonably foreseeable by the defendant.[6]  We therefore vacate Defendant's sentence and remand the proceedings to the district court to make a finding regarding the foreseeability of the co-defendants' possession of the firearms, and impose sentence accordingly.

VACATED AND REMANDED.

---

[6]We offer no opinion whether, under these case facts, the firearms possession by Gallo's co-conspirators was reasonably foreseeable by Gallo.