[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-10810

_____

D. C. Docket No. 01-00733-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVEN BERNARD PITTS,
BYRON SYLVESTER PITTS,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 11, 2005)

Before ANDERSON, HULL and RONEY, Circuit Judges.

PER CURIAM:

This appeal is brought by two brothers, Byron Sylvester Pitts ("Byron") and

Steven Bernard Pitts ("Steven"), who were convicted of two drug offenses. Byron Pitts was also convicted of a firearms offense. The two defendants were convicted in a single trial, and now appeal their convictions and sentences. After review and oral argument, we affirm the defendants' convictions, but vacate their sentences and remand for resentencing under an advisory Sentencing Guidelines system pursuant to Booker.

## I. EVIDENCE AT TRIAL

In order to analyze properly the defendants' challenges to their convictions, and the district court's application of the Sentencing Guidelines, we recount the evidence produced at the defendants' joint trial.

Byron and Steven Pitts are brothers from College Park, Georgia who operated as drug brokers, arranging drug deals involving large amounts of cocaine. On October 5, 2001, the Drug Enforcement Agency ("DEA") conducted a reverse sting operation with the help of confidential informant Eric Staples, a federal prisoner convicted of drug trafficking and a long-time friend of Byron and Steven Pitts. Byron was arrested during the sting operation. Steven fled the scene and remained a fugitive for approximately one year.

At trial, the government introduced a video tape of a conversation between Staples and the defendants in which Staples informed the defendants that he was

prepared to sell them a quantity of cocaine. Staples testified that as a result of the video-taped conversation, Byron called Staples and placed an order for 100 kilograms of cocaine.

The government introduced dozens of taped telephone calls between Staples and the defendants discussing the details of the proposed drug transaction, including the location of the exchange, the parties to be involved, and the price. Staples testified that the defendants ultimately increased their order to 110 kilograms of cocaine.

The government also introduced a statement made by Byron Pitts upon his arrest detailing his involvement in the operation. According to the DEA agent who interviewed Byron after his arrest, Byron admitted to participating in the drug deal and identified the key participants. Byron also stated that the deal was to be a "turn-around" in which the purchaser would sell the first shipment of cocaine immediately, and then purchase an additional 110 kilograms of cocaine the following day.[1]

Eddie Myrick, another federal prisoner convicted of cocaine conspiracy, testified that he was to be the purchaser of the cocaine in the deal set up by the

[1]At a pre-trial hearing, Steven Pitts expressed concern that admitting the confession of Byron Pitts, a non-testifying co-defendant, would implicate Steven's rights under the Sixth Amendment's Confrontation Clause. In response to this concern, all mention of Steven Pitts was omitted from the testimony regarding Byron's confession.

DEA and Staples. Myrick testified that on the day of the planned drug deal, he transferred more than two million dollars into Steven Pitts's gold Cadillac Escalade and followed Steven to the location where the deal was to be consummated. At some point, Myrick realized that the drug deal was "a set-up," and he and Steven fled the scene.

The parties stipulated that, during the sting, the government seized two million dollars in cash from the back of a gold Cadillac Escalade that was parked at the scene. The DEA agent also testified that when Byron Pitts was arrested, police found "a Glock handgun fixed with a laser sight on the trigger guard" in Byron's front pocket.

Staples, the alleged supplier of the cocaine, also testified that he had a long history of supplying the Pitts brothers with cocaine, beginning in March or April of 2001. The first transaction involved 10 kilograms. A few weeks later Staples sold the defendants 70 kilograms of cocaine for one million dollars.

Myrick also testified that he had purchased cocaine from the defendants on numerous occasions. Myrick testified specifically to several transactions, including one in which he purchased 50 or 70 kilograms, and another in which he purchased approximately 30 kilograms.

Todd Walker, another federal prisoner convicted of drug trafficking, testified

that he sold cocaine to the defendants from 1998 to 2000 on approximately ten occasions each. Walker stated that the most he ever sold to Byron or Steven in a single transaction was one kilogram.

The jury found both Byron and Steven Pitts guilty of (1) conspiracy to possess with the intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846, and (2) aiding and abetting each other to possess with intent to distribute at least five kilograms of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(b)(1)(A)(ii). In addition, the jury found Byron Pitts guilty of possessing a firearm during the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

## II. SENTENCING

Byron and Steven Pitts were sentenced separately. We next recount the details of their sentencing hearings in turn.

### A. Byron Pitts's Sentencing

During Byron Pitts's sentencing hearing, the district court attributed to him at least 150 kilograms of cocaine, yielding a base offense level of 38 under the Sentencing Guidelines. The district court based its drug quantity finding on the trial testimony regarding the amount of cocaine involved in the sting and other previous transactions. The district court granted a two-level reduction for

acceptance of responsibility under U.S.S.G. § 3E1.1 because Byron's post-arrest confession had led to the arrest of several other participants, including Eddie Myrick. The district court denied Byron's request for a minor-role reduction.

With a total adjusted offense level of 36 and criminal history category of II, the district court calculated a Guidelines range of 210-262 months' imprisonment for the drug counts, with an additional statutory mandatory minimum of 60 months's imprisonment on the firearms charge. The district court sentenced Byron Pitts to the low end of the Guidelines range, imposing 210 months' imprisonment on the two drug counts to be served concurrently, and the statutory mandatory minimum 60 months' imprisonment on the firearm count, to be served consecutively.

**B. Steven Pitts's Sentencing**

During Steven Pitts's sentencing hearing, the district court attributed to him at least 150 kilograms of cocaine, yielding a base offense level of 38 under the Guidelines. As in Byron's sentencing, the district court based this drug quantity finding on the trial testimony regarding the amount of cocaine involved in the sting and previous transactions. In addition, the district court granted a two-level increase under U.S.S.G. § 2D1.1(b)(1), concluding that it was reasonably foreseeable to Steven that Byron would possess a firearm during the commission

of the drug trafficking offense.[2]

With a total adjusted offense level of 40 and criminal history category of III, the district court calculated a Guidelines range of 360 months' to life imprisonment. The district court sentenced Steven Pitts to the low end of the Guidelines range, imposing 360 months' imprisonment on the two drug counts, to be served concurrently.

## III. DISCUSSION

### A. Conviction Issues

On appeal, the defendants raise several challenges to their convictions. Both defendants claim: (1) that they were incompetent to stand trial; (2) that the evidence of prior unrelated drug transactions should not have been admitted at trial; and (3) that the district court should have given their requested jury instruction on withdrawal from a conspiracy.

In addition, each defendant separately raises certain issues. Specifically,

---

[2]U.S.S.G. § 2D1.1(b)(1) provides for the alteration of the "base offense level" based on the specific characteristics of a drug trafficking offense. Specifically, it state, "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

Where an increase in sentence pursuant to § 2D1.1(b)(1) is based on a co-conspirator's possession of a firearm, this Court has determined that certain requirements must be met. Specifically, we have held that the government must prove by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir. 1999). As noted later, Steven Pitts does not appeal the fact-finding that supports this two-level firearm enhancement under § 2D1.1(b)(1).

Steven Pitts argues: (1) that the admission of Byron's confession violated his rights under the Confrontation Clause of the Sixth Amendment; and (2) that the district court improperly refused to instruct the jury that a buyer/seller relationship does not constitute a conspiracy.

On appeal, Byron Pitts argues: (1) that his post-arrest statement was admitted in violation of 18 U.S.C. § 3501(c) because of the delay in bringing him before a magistrate judge; and (2) that the district court abused its discretion in denying Byron's motion to sever the trial.

After review and oral argument, we find that all of these issues are without merit and warrant no further discussion.

## B.  Fact-Findings at Byron's Sentencing

On appeal, in addition to raising the Booker issues discussed below, Byron Pitts challenges the fact-findings during his sentencing hearing.[3]  Specifically, Byron Pitts challenges the district court's findings (1) that his offenses involved at least 150 kilograms of cocaine, and (2) that he was not entitled to a minor-role reduction.  We review these fact-findings for clear error.  See, e.g., United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc) (minor-role reduction); United States v. Mertilus, 111 F.3d 870, 873 (11th Cir. 1997) (drug quantity).

---

[3]On appeal, Steven Pitts does not challenge the district court's fact-findings or Guidelines calculations with respect to his sentence.

With regard to drug quantity, there was ample evidence to support the 150-kilogram quantity of cocaine. For example, the extensive trial evidence included: (1) a confession by Byron Pitts in which he stated that the 110-kilogram cocaine purchase that he orchestrated was to include a second "turn around" involving another 100 kilograms of cocaine; (2) corroborating testimony from two associates of the Pitts brothers establishing a history of large-quantity drug transactions; and (3) the seizure of more than two million dollars in cash (an amount consistent with over 100 kilograms of cocaine).

With regard to the minor-role reduction, the trial evidence showed that Byron Pitts's role in the offenses was substantial and crucial. For example, there were dozens of taped phone conversations between Byron Pitts and the DEA's confidential informant discussing the details of the drug transaction. Byron set the price and determined where and when the drug transfer was to take place. Also, it was Byron who originally ordered the 100 kilograms of cocaine. The testimony relating to prior transactions also showed that Byron Pitts operated as at least an equal partner with his brother. Taken together, the evidence showed that Byron's role in the offenses was anything but minor. At a minimum, Byron failed to establish that his role was minor.[4]

_____

[4]As to the minor-role reduction, Byron Pitts has the burden of proving his minor role by a preponderance of the evidence. United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002).

Accordingly, based upon all the evidence in this case, the district court did not clearly err in making its factual determinations as to either the drug quantity or the minor-role reduction.

## C. <u>Booker</u> Issues

In their initial briefs on appeal, both defendants argued that their sentences were increased based upon facts not found by the jury in violation of <u>Blakely v. Washington</u>, 542 U.S. __, 124 S. Ct. 2531 (2004). Since the filing of the briefs on appeal, the Supreme Court extended <u>Blakely</u> to the Federal Sentencing Guidelines in <u>United States v. Booker</u>, 543 U.S. __, 125 S. Ct. 738 (2005). Under <u>Blakely</u> (now <u>Booker</u>), the defendants contend that the judicial fact-findings underlying their sentence enhancements violated the Sixth Amendment.

Because the defendants did not raise this <u>Blakely</u> (now <u>Booker</u>) issue in the district court, we review only for plain error. <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005), <u>petition for cert. filed</u> 73 U.S.L.W. 3531 (U.S. Feb 23, 2005) (No. 04-1148). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" <u>Id.</u> (quoting <u>United States v. Cotton</u>, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002)). If these three condition are met, then we have discretion to reverse a forfeited error, "but only if (4) the error

seriously affects the fairness, integrity, or public reputation of judicial

proceedings.'" Id. (quoting Cotton, 535 U.S. at 631, 122 S. Ct. at 1785).

It is undisputed that both defendants were given sentences based upon extra-

verdict enhancements under the Guidelines.[5]  It is further undisputed that, under

Booker, these extra-verdict enhancements imposed under a mandatory guidelines

system violated the defendants' Sixth Amendment rights.  See Booker, 125 S. Ct.

at 749-56; Rodriguez, 398 F.3d at 1301 (Booker error is "not the use of extra-

verdict enhancements . . . .  [Rather,] [t]he constitutional error is the use of extra-

verdict enhancements to reach a guidelines result that is binding on the sentencing

judge.") (emphasis added).

This Court has already determined that this type of Booker error meets the

first two prongs of plain-error review because it is (1) error, (2) that is plain.

United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005);  Rodriguez,

398 F.3d 1298-99.  We thus move to the third prong of plain-error analysis.

Under the third prong, Byron and Steven Pitts bear the exacting burden of

showing that the Booker errors in their sentencing "affect[ed] [their] substantial

---

[5]The jury returned a verdict convicting the defendants of drug crimes involving at least five kilograms of cocaine.  The defendants were sentenced based upon judicial fact-findings that their drug crimes involved more than 150 kilograms of cocaine.  In addition, while Byron Pitts was convicted of possessing a firearm during a drug trafficking offense, Steven Pitts was not charged with a firearms offense.  Rather, Steven Pitts's sentence was enhanced by the district court based upon a determination that Byron's use of a firearm was foreseeable to Steven.

rights." Shelton, 400 F.3d at 1331. The defendants' heavy burden in this regard "is to show that the error actually did make a difference." Id. at 1332 (quotation marks and citation omitted). Specifically, in post-Booker sentencing cases, the third prong is met only if the defendant shows "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301. A "reasonable probability of a different result" is a probability "sufficient to undermine confidence in the outcome." Id. at 1299.

In this case, as in Shelton, we conclude that both Byron and Steven Pitts have carried this exacting burden. As to Byron Pitts, the district court sentenced Byron to 210 months, the low end of the Guidelines range. More importantly, here the district court also indicated its dissatisfaction with the sentence it was required to impose under the Guidelines. At one point during Byron Pitts's sentencing hearing, the district court stated that it felt constrained by the letter of the Guidelines despite its desire to impose a lesser sentence. Specifically, the court stated, "Frankly, I'd like to help you out because I don't want to impose the kind of sentence I've got to impose today . . . ."

In addition, when calculating Byron's criminal history category, the district court noted that it was "troubled by the fact that [one of the misdemeanor

convictions in Byron's criminal history] wasn't counseled." However, the district court again noted that it was constrained by the Guidelines on this point, stating that "[t]he guidelines say that even uncounseled misdemeanors should be counted, so based on that I'm going to rule against you . . . ."

As was the case in <u>Shelton</u>, all of these comments, and a fair reading of the sentencing transcript as a whole, "convince us that there is a reasonable probability the district court would have imposed a lesser sentence in [this] case if it had not felt bound by the Guidelines." <u>Shelton</u>, 400 F. 3d at 1332-33.

Likewise, as to Steven Pitts, the district court sentenced Steven to 360 months, the low end of the Guidelines range. Also, during Steven Pitts's sentencing hearing, the district court expressed dissatisfaction with the sentence it was bound to impose. For example, although the district court ultimately sentenced Steven at the lowest possible end of his Guidelines range, the district court stated that the sentence "was very harsh." The district court also specifically thanked Steven's attorney for attempting to have the sentence reduced, stating that "you've given me every opportunity to not do what I think the law requires me to do and I thank you for that."

Again, all of these comments, and a fair reading of the sentencing transcript as a whole, "convince us that there is a reasonable probability the district court

-13-

would have imposed a lesser sentence in [this] case if it had not felt bound by the Guidelines." Id.

Finally, the fourth prong of plain-error analysis requires us to consider whether the sentencing errors in this case "seriously affected the fairness, integrity or public reputation of judicial proceedings." Id. at 1333 (quotation marks, punctuation, and citation omitted). Under the facts and circumstances of this case, we also conclude that the fourth prong is established and that an exercise of our discretion is warranted.[6]

## IV. CONCLUSION

For all of the above reasons, we AFFIRM all the convictions of defendant Byron Pitts and defendant Steven Pitts. We VACATE their sentences and REMAND to the district court so that each defendant may be resentenced in a manner consistent with Booker.

---

[6]We note that Byron Pitts's 60-month sentence imposed for carrying a firearm during the commission of a drug trafficking offense constitutes the statutory mandatory minimum for that offense. See 18 U.S.C. § 924 (c)(1)(A)(i) (stating that any person violating the statute "shall, in addition to the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years"). On remand, the district court will remain constrained by the statutory sentencing provision. Therefore, the only portion of Byron Pitts's sentence that could be affected by consulting the § 3553(a) factors is the 210-month sentence Pitts received for his drug convictions.

We also note, as we did in Shelton, that we do not know what sentence the district court might impose on either defendant after consulting the factors in § 3553(a). We therefore cannot determine at this time whether a particular sentence below the Guidelines range will be reasonable in this case, and do not express any opinion on the reasonableness of such a sentence. See Shelton, 400 F.3d at 1333 n.11.

We note that in this case, the district court correctly determined the proper Guidelines range for both Byron's and Steven's convictions. On remand, the district court is required to resentence each defendant under an advisory Guidelines regime, and shall consider the relevant Guidelines range for each defendant and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." Booker, 125 S. Ct. at 757.[7]

AFFIRMED in part; VACATED and REMANDED in part.

---

[7]We do not mean to imply that on remand the district court must impose a lesser sentence. On remand, the district court may impose the same sentence. Rather, we merely hold that Byron and Steven Pitts have each shown a reasonable probability that the district court would have imposed a lesser sentence under an advisory Guidelines regime.