[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 5, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11066
Non-Argument Calendar

_____

D. C. Docket Nos. 07-00223-CR-BAE-4
07-00312-CR-BAE

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARRY CLIFFORD CHUPURDY,
a.k.a. Garry C. Chupurdy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(November 5, 2008)**

Before BLACK, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Garry Clifford Chupurdy appeals his concurrent 220-month sentences for importation of marijuana, conspiracy to import marijuana, conspiracy to possess with intent to distribute marijuana, and money laundering.[1] First, Chupurdy argues that the cooperation-agreement provisions of U.S.S.G. § 1B1.8(a) were violated when the district court held him accountable at sentencing for 47.09 kilograms of hashish oil found in Chupurdy's two storage sheds because, Chupurdy claims, law enforcement agents were not aware of the existence of the hashish oil until he told them about it. Next, Chupurdy argues that the court erred in its application of the two-level increase for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1) because, he claims, the weapons he admitted that he possessed were kept aboard his 78-foot catamaran, the "CAT'S MEOW," solely for protection from pirates. For the reasons set forth more fully below, we affirm.

## I. LAW & ANALYSIS

## A. Section 1B1.8's Cooperation-Agreement Provisions

We review for clear error the district court's factual determination of the

---

[1] As a result of the charges in two separate indictments filed in the Southern District of Georgia ("CR407-00223") and the District of South Carolina ("CR407-00312"), Chupurdy pled guilty to: (1) importation of 100 kilograms of marijuana, in violation of 21 U.S.C. § 952(a), CR407-00223/Count 2; (2) conspiracy to import 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 963, CR407-00312/Count 1; (3) conspiracy to possess with intent to distribute and to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, CR407-00312/Count 2; and (4) money laundering, in violation of 18 U.S.C. § 1956(h), CR407-00312/Count 3. Chupurdy received concurrent sentences of 220 months' imprisonment for all four convictions.

drug quantity for which Chupurdy is accountable. United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). Where a defendant alleges a violation of § 1B1.8 in the district court, we review the district court's factual findings for clear error. United States v. Pham, 463 F.3d 1239, 1243 (11th Cir. 2006). "For a factual finding to be 'clearly erroneous,' this court, 'after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed.'" United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (citation omitted).

Section 1B1.8 provides that,

> [w]here a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of the cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range . . .

U.S.S.G. § 1B1.8(a). However, the provision expressly provides that, inter alia, it "shall not be applied to restrict the use of information . . . known to the government prior to entering the agreement." U.S.S.G. § 1B1.8(b)(1). In addition, we have held that "so long as the information is obtained from independent sources . . ., it may be used at sentencing without violating § 1B1.8." Pham, 463 F.3d at 1244. "However, 'the government may not evade U.S.S.G. § 1B1.8(a) where the evidence was elicited solely as a result of, or prompted by, the defendant's

3

cooperation." Id.

The district court did not clearly err in holding Chupurdy accountable for 3,488.2 kilograms of marijuana, which included the marijuana equivalency of 47.09 kilograms of hashish oil that was found in the two storage sheds.[2] Law enforcement agents had obtained search warrants for the storage sheds prior to Chupurdy's arrest and disclosure, and one of the agents testified at Chupurdy's sentencing hearing that (1) agents were preparing to execute the warrants at the time of Chupurdy's disclosure, and (2) the warrants would have been executed regardless of whether Chupurdy agreed to cooperate. Thus, Chupurdy's disclosure did not prompt agents to search those locations. In other words, the hashish oil discovered in the storage sheds was not elicited solely as a result of Chupurdy's cooperation, even though agents were unaware of its existence prior to Chupurdy's disclsoure. See Pham, 463 F.3d at 1244. As such, the district court's calculation of Chupurdy's base offense level did not violate § 1B1.8(a).[3] See id.

**B. Two-level firearm increase, pursuant to § 2D1.1(b)(1)**

We review "the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1)

---

[2] Some of the hashish oil (24.23 kilograms) was recovered from a search of Chupurdy's smaller Bertram boat that had been taken to one of the storage sheds.

[3] The hashish oil that was found at the bottom of the ocean was not included in the calculation of Chupurdy's base offense level. Thus, to the extent Chupurdy argues otherwise, his argument lacks merit.

4

for clear error, and the application of the Sentencing Guidelines to those facts de novo." United States v. Gallo, 195 F.3d 1278, 1280-81 (11th Cir. 1999). "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004).

Pursuant to § 2D1.1(b)(1), a defendant's offense level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Application Note 3 of the provision provides:

> The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1, comment. (n.3). "The government has the burden under § 2D1.1 to demonstrate the proximity of the firearm to the site of the charged offense by a preponderance of the evidence." United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001). The government need not prove that the firearm was used to facilitate the distribution of drugs. Id. at 1289-90. "If the government is successful, the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was 'clearly improbable.'" Id. at 1289 (citation omitted).

5

Chupurdy's argument that the district court erred in applying § 2D1.1(b)(1) is without merit. Chupurdy concedes that the government met its burden, thus, Chupurdy was required to demonstrate that a connection between the weapons and the offense was clearly improbable, which he has failed to do. See U.S.S.G. § 2D1.1, comment. (n.3); Audain, 254 F.3d at 1289. Although Chupurdy claims that the weapons were onboard the CAT'S MEOW to protect the crew from pirates, his claim does not diminish the likelihood that the weapons also could have been used to protect the large quantities of drugs that were being transported.[4] See Audain, 254 F.3d at 1289. Accordingly, the district court did not clearly err in applying the two-level increase.

**AFFIRMED.**

---

[4] This is true regardless of the other crew members' failure to admit to the weapons' whereabouts and Chupurdy's forthcomingness with authorities.