[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13940
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cr-00037-RH-CAS-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ANGEL MORENO-ORTEGA,
JOSE MISAEL GARFIAS-GARCIA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(June 27, 2013)

Before TJOFLAT, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

In this multi-defendant appeal, co-defendants Miguel Angel Moreno-Ortega

and Jose Misael Garfias-Garcia appeal from their convictions following a jury trial

on one count of conspiracy to distribute, and possession with intent to distribute, cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Moreno-Ortega challenges his seventy-eight month sentence, arguing there was not sufficient evidence for the district court to apply a sentencing enhancement based on possession of a firearm.

Garfias-Garcia contests his conviction, arguing the district court erred in denying his pretrial motion to suppress evidence seized from his home after his arrest.  He argues that his consent to search was tainted by illegal police conduct. Therefore, the district court should have suppressed evidence found as "fruit of the poisonous tree."

## I.

We first address the issue of the application of a firearm enhancement in calculating the Guideline sentence for Moreno-Ortega.

Evidence at trial showed that Moreno-Ortega and his uncle, Garfias-Garcia, worked in a larger group that moved illicit drugs between suppliers and distributors throughout the Southeast.  Police investigating the group believed they had seen Garfias-Garcia transporting drugs to and from his house on County Road 69-A, Altha, Florida, where they also frequently saw Moreno-Ortega.  When arresting members of the group, ultimately charged as conspirators, law enforcement officers completed a search of the County Road 69-A house and found a Lorcin

2

firearm between the box spring and mattress in a smaller bedroom.  The search also turned up a money counter; a vacuum sealer; two sealed packages with $10,000 cash; a box with vacuum sealer bags and a loaded Browning pistol in the home office; and $44,832 in cash in Garfias-Garcia's master bedroom closet.

Moreno-Ortega argues the district court erred in applying the firearm enhancement for the Lorcin handgun found in the smaller bedroom, as there was no evidence he possessed the handgun or that he lived in Garfias-Garcia's house. He also asserts that he cannot be held accountable for the Browning pistol found in the office because the government failed to show the gun was used in furtherance of the conspiracy, or that Moreno-Ortega could have reasonably foreseen possession of the gun by a co-conspirator.

"We review the district court's findings of fact under [United States Sentencing Guidelines] § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo."  United States v. Gallo, 195 F.3d 1278, 1280 (11th Cir. 1999).

A two-level firearm enhancement is warranted if "a dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1) (Nov. 2011). Before the enhancement is imposed, the government must show "by a preponderance of the evidence that the firearm was present at the site of the charged conduct."  United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995).  Then,

"the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." Id.

Alternatively, a firearm enhancement may be applied based on a co-conspirator's possession where the government shows by a preponderance of the evidence: (1) that a co-conspirator possessed the firearm; (2) that the possession was in furtherance of the conspiracy; (3) that the defendant was a member of the conspiracy at the time of possession; and (4) that the co-conspirator's possession of the firearm was reasonably foreseeable to the defendant. Gallo, 195 F.3d at 1284.

The district court did not err in applying the firearm enhancement for either the Lorcin firearm or the Browning pistol found at the Garfias-Garcia residence. First, the government proved by a preponderance of the evidence that the Lorcin firearm was found in Moreno-Ortega's bedroom through the undisputed testimony from Special Agent Diana Hunter that Moreno-Ortega lived in the smaller bedroom. Moreno-Ortega has not demonstrated that a connection between that handgun and the drug offense was clearly improbable. See Hall, 46 F.3d at 64. Second, it was reasonably foreseeable to Moreno-Ortega that his co-conspirator, Garfias-Garcia, would possess a firearm, see Gallo, 195 F.3d at 1284, and the presence of the Browning pistol near a money counter, a vacuum sealer, and cash was enough to show that it was possessed during the offense. Cf. Hall, 46 F.3d at 64 (holding that the proximity of a weapon to drug paraphernalia can be sufficient

to show possession by a defendant during the offense or relevant conduct).  Thus, the district court properly applied the firearm enhancement.

## II.

Garfias-Garcia separately appeals the district court's denial of a motion to suppress evidence that he argues was obtained in an illegal search of his residence.

## A.

On May 29, 2011, prompted by concerns that Garfias-Garcia would flee due to the arrest of alleged co-conspirators, law enforcement officials decided to arrest Garfias-Garcia at his house without waiting for an arrest warrant or search warrant. Believing Garfias-Garcia to be home, officers approached the house around 4:30 P.M.   After a knock and announce, the officers were denied entry by a woman seen through the front door window who then turned and fled down the hallway. The officers then entered without consent and completed a brief, thirty-second, protective sweep.  Two Hispanic women, including Garfias-Garcia's pregnant wife, were secured on the ground with handcuffs and then moved to a couch once the police verified there was no threat.  No weapons or other people were found during the sweep.

Roughly thirty minutes later, with the women still handcuffed inside the house, Garfias-Garcia, his two young children, and his associate Eliazar Moreno

5

arrived home.  Garfias-Garcia was arrested and handcuffed outside the house and then taken inside.

Thirty to forty-five minutes later, Agent Hunter arrived to provide Spanish interpretation.  Agent Hunter's interview with Garfias-Garcia lasted approximately eleven minutes, and she read him his Miranda rights after four minutes.  Garfias-Garcia invoked his rights to counsel and silence.  Agent Hunter then asked him for permission to search the house as a part of a drug investigation and he gave oral consent to do so, limiting his consent to rooms he typically occupied.  Agent Hunter also asked Garfias-Garcia to sign a consent to search form.  The form, translated from Spanish to English, contained three paragraphs, stating that the signatories had been asked for permission to search, that they were not threatened or forced, and that their consent to the search was freely given.  After a forty-five minute delay getting a paper copy of the translated form, Garfias-Garcia signed it and the search began around 6:30 P.M.

Before trial, Garfias-Garcia moved to suppress the evidence obtained in that search.  The district court denied the motion to suppress, finding that the consent was voluntary and not limited.  It did not address whether the police acted unlawfully or the consent was tainted.

6

B.

Garfias-Garcia argues that the district court erred in its suppression analysis because even if the consent was voluntarily given, the "fruit of the poisonous tree" doctrine required suppression under the Fourth Amendment, as the evidence was not sufficiently attenuated from the unlawful police conduct to dissipate the taint.[1]

We normally review a district court's denial of a motion to suppress as a mixed question of law and fact, reviewing factual findings for clear error and interpretation and application of law de novo. United States v. Delancy, 502 F.3d 1297, 1304 (11th Cir. 2007). When a defendant fails to raise a specific objection before the district court, however, we review the matter only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005); see also United States v. Young, 350 F.3d 1302, 1305 (11th Cir. 2003) (holding that, because the defendant did not raise a particular ground for suppression of the evidence before the district court, we would review the claim only for plain error).

Garfias-Garcia did not clearly articulate a tainted consent or attenuation argument below. When the district court asked Garfias-Garcia questions about the alleged illegality of the police actions, he responded by discussing the

---

[1] In his appellate brief, Garfias-Garcia makes only a passing reference to his chief argument below: that the consent was not voluntary. We decline to consider issues not briefed on appeal and they are deemed abandoned. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). For this reason, we will focus on Garfias-Garcia's tainted consent argument.

voluntariness of the consent.  Neither did he cite any caselaw on attenuation.[2]

Thus, we review Garfias-Garcia's arguments on appeal for plain error only.  See

Young, 350 F.3d at 1305.  To prevail on a claim under plain error, a defendant

must show "(1) error, (2) that is plain, and (3) that affects substantial rights."

Rodriguez, 398 F.3d at 1298 (quotation marks omitted).  Even then, an appellate

court only has discretion to correct the error "if (4) the error substantially affects

the fairness, integrity, or public reputation of judicial proceedings."  Id. (quotation

marks omitted).

Where a "consent to search" follows allegedly unlawful police conduct, the

court must determine (1) whether the consent was voluntary; and (2) whether the

consent, even if voluntary, was the product of the unlawful police conduct.

Delancy, 502 F.3d at 1308.  The government bears the burden on both issues.  Id.

Three non-exhaustive factors guide the "attenuation analysis" under Delancy's

second prong: (1) the temporal proximity between the unlawful conduct and the

consent; (2) the presence of intervening circumstances; and (3) the purpose and

flagrancy of the unlawful conduct.  Id. at 1309–10.

We affirm because we find no error, plain or otherwise, under Delancy.

Even if we assume, as Garfias-Garcia argues, that police presence inside the house

---

[2] Garfias-Garcia also seeks relief because he argues that the district court erred in not performing a mandatory inquiry into "whether the consent, even if voluntary, was purged of the taint."  But, as explained, Garfias-Garcia did not clearly make a tainted consent or attenuation argument below.  Therefore we reject the argument that the district court erred by not making that inquiry.

after the initial protective sweep and their reentry after the arrest outside may have tainted the consent given, ultimately "the causal connection had become so attenuated as to dissipate the taint." See id. at 1309 (quotation marks omitted). Specifically, the second and third prongs of Delancy counsel in favor of affirming.[3] Garfias-Garcia's invocation of Miranda, verbal consent to a search, and then written consent were significant intervening factors dissipating the taint. His refusal to cooperate with questioning and the geographical limits he imposed on his oral consent suggests a lack of unlawful pressure. See Delancy, 502 F.3d at 1311–12. Garfias-Garcia had forty-five minutes to revoke consent, also suggesting that his choice was deliberate and not the product of illegal police conduct. Neither was there any evidence that the purpose of the alleged improper police conduct was to gain a corrupt advantage.

For these reasons, the voluntary consent was not tainted by unlawful actions, and the district court did not err in denying Garfias-Garcia's motion to suppress the evidence found in his home after his arrest.

**AFFIRMED.**

---

[3] Typically, "[i]f only a short period of time has passed, a court is more likely to consider the consent as a 'poisonous fruit' of the illegal act—that is, that the consent is tainted." Delancy, 502 F.3d at 1310. Here, however, the length of time that passed arguably made the alleged improper actions more problematic, rather than dissipating the taint. Garfias-Garcia's argument is, essentially, that his consent was tainted by the fact that the police continued to detain his "scared, pregnant" wife and kept her handcuffed for several hours. Because the government's case is strong with respect to the second and third prongs of the Delancy analysis, however, this circumstance is not fatal to the government's argument.