[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11916
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20833-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REITILLY FUENTES RAMOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 21, 2019)

Before WILSON, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Reitilly Fuentes Ramos challenges his sentence for possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He argues that the district court improperly applied a two-level enhancement for possession of a dangerous weapon in relation to a drug offense, pursuant to U.S.S.G. § 2D1.1(b)(1). For the following reasons, we affirm.

After entering a guilty plea, at the sentencing phase of his case Ramos objected to the Presentence Investigation Report's inclusion of the two-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1).  At Ramos's sentencing hearing, the DEA agent involved in the investigation testified to the following facts, which Ramos confirmed were true and correct. Law enforcement initially contacted Ramos through a confidential informant. That informant met with Ramos at Ramos's residence to discuss the purchase of methamphetamine, which Ramos sold to the informant.  During the transaction, the informant observed what appeared to be a firearm in plain view on top of a dresser in an adjacent room.  Ramos later moved his residence to a new location and sold the informant methamphetamine there on two occasions.  During both of those transactions, the informant again saw what appeared to be a firearm in an adjacent room.  A few days later, law enforcement officers searched Ramos's residence, finding methamphetamine, cocaine, and drug-trafficking paraphernalia such as a

2

digital scale and empty baggies.  They also found a pellet gun in plain view in the location described by the informant.

On appeal, Ramos's argument relies on the facts that there was no evidence that the pellet gun was loaded, that the gun was kept in a separate room during the drug transactions, that the gun was not on his person, and that he did not brandish or gesture toward the pellet gun during the transactions.  Ramos contends that his pellet gun was analogous to an unloaded hunting rifle in a closet—a scenario which the commentary to the guidelines advises does not trigger the enhancement, U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A)—and that it was "clearly improbable that the weapon was connected with the offense[s]." *See* U.S.S.G. § 2D1.1 cmt. n.11(A).

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts *de novo*." *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999).  "Whether a defendant possessed a firearm for purposes of § 2D1.1(b)(1) is a factual finding that we review under the clear-error standard." *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017).  "[W]e will not find clear error unless our review of the record leaves us 'with the definite and firm conviction that a mistake has been committed.'" *United States v. White*, 335 F.3d 1314, 1319 (11th Cir. 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The sentencing guidelines provide for a two-level sentence enhancement when a defendant possesses a dangerous weapon, including a firearm. U.S.S.G. § 2D1.1(b)(1). The commentary to § 2D1.1(b)(1) provides that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at [his] residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A). Additionally, the commentary to § 1B1.1—which the commentary to § 2D1.1(b)(1) cites for its definitions of "firearm" and "dangerous weapon"— provides that "[a] weapon, commonly known as a 'BB' or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm." U.S.S.G. § 1B1.1, cmt. n.1(G) (2016).

Our precedent prescribes the following burden-shifting approach to applying the dangerous weapon enhancement. Initially, the government must show, by a preponderance of the evidence, that the weapon "was 'present' at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction." *George*, 872 F.3d at 1204. We have held that "proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)." *United States v. Carillo-Ayala*, 713 F.3d 82, 91 (11th Cir. 2013). Further, a weapon may be "present" at the site of

4

the charged conduct regardless of whether it is in the same room where the offense conduct occurred, as long as it is at the same general location. *See United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998) (holding that a weapon was "present" for the purposes of the § 2D1.1(b)(1) enhancement where the firearm was in the office of a warehouse, and the cocaine was found in and around the warehouse); *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995) (upholding the enhancement where "the handgun was in the same room with objects ordinarily associated with the drug trade: scales, a ziplock bag containing cocaine residue, and a large amount of cash."); *George*, 872 F.3d at 1204–05 (upholding the enhancement where the weapon was found at the front desk of a barbershop, while the offense conduct occurred in a back room).

"If the government meets this initial burden, the burden shifts to the defendant, who must show that a connection between the weapon and the offense was 'clearly improbable.'" *Id.* at 1204. Failure to produce such evidence permits a district court to apply the enhancement without committing clear error. *Hall*, 46 F.3d at 64.

Here, the district court did not clearly err in imposing the two-level enhancement under § 2D1.1(b)(1) for possession of a dangerous weapon. A pellet gun is a dangerous weapon under the plain language of the guideline commentary, and the government met its initial burden of showing that this dangerous weapon

5

was present at the site of the charged conduct.  A dangerous weapon in plain view during the multiple transactions at Ramos's residences has no other apparent purpose than to protect the drug supply, and is therefore substantively different from the example of an unloaded hunting rifle hidden in a closet, as contemplated in the guidelines commentary. U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A).  Although Ramos established that there was no evidence that he brandished the weapon or used it to threaten the confidential source, he did not meet his burden of showing that it was clearly improbable that there was a connection between the weapon and the charged offense.  Accordingly, we are not left with the "definite and firm conviction that a mistake has been committed," *White*, 335 F.3d at 1319, and therefore we affirm.

     **AFFIRMED.**