[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 7, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15700
Non-Argument Calendar

_____

D. C. Docket No. 07-00391-CR-T-17-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DERECK LANE,
a.k.a. D,
a.k.a. D-Lane,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 7, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Dereck Lane appeals his 168-month sentence for conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846. Lane argues that the district court erred in applying a two-level enhancement for firearm possession under U.S.S.G. § 2D1.1(b)(1) because there was insufficient evidence that a co-conspirator was in possession of the firearm. For the reasons that follow, we VACATE his sentence and REMAND for further proceedings in light of this opinion.

## I. BACKGROUND

On 10 June 2008, Lane pleaded guilty to conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846. Lane and Maurice Hemingway were identified as the organizers of a marijuana distribution operation in Pinellas County, Florida. Lane and Hemingway set up residences known as "traps" in St. Petersburg, Florida, where large quantities of marijuana were stored and distributed. On 25 October 2006, law enforcement officers executed a search warrant at a trap house located at 2400 12th Street South, finding one pound of marijuana and a firearm inside the residence. Lane, Hemingway, and other individuals were arrested and charged with possession of marijuana and other offenses.

Under the Sentencing Guidelines, Lane's final adjusted offense level was 35,

2

which included a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm. This, along with Lane's criminal history category of I, yielded a sentence range of 168 to 210 months of imprisonment.

At the sentencing hearing, Lane noted his objection to the firearm enhancement, contending that he should not be held accountable for the firearm since he was not arrested on the date of the search and was not charged with a firearms offense. See R3 at 13-14. Lane also argued that, because he was not in possession of the firearm, it was the government's burden to show that a co-conspirator constructively possessed the firearm before the burden shifted to Lane to show that it was clearly improbable that the presence of the firearm was connected to the possession of the one pound of marijuana. See id. at 18.

In response, the government called one witness, Frederick Hutson, who was also indicted and convicted for the conspiracy. Hutson testified that Lane was present at the time the trap house was searched and that Lane told him that a gun was found in a sofa cushion, with an individual named Sheffield, who was not charged in the indictment, lying on top of it. See id. at 43-45. When asked about Sheffield's role with respect to the distribution of marijuana, Hutson replied that, "[f]rom [his] knowledge," Sheffield distributed small amounts of marijuana that "maybe he purchased himself and then sold small amounts himself." Id. at 45.

Hutson stated that he "believe[d]" Sheffield purchased the marijuana from Hemingway. Id. On cross-examination, Hutson stated that he was not at the trap house when it was searched, and that he did not know to whom the firearm belonged. See id. at 54-55.

Based on Hutson's testimony, the government argued that Sheffield was a co-conspirator and that he was in constructive possession of the firearm since he was lying on top of the cushion in which the firearm was located. See id. at 65. Lane argued in response that there was no connection between himself and Sheffield, and the fact that Sheffield may have been seated on a cushion with a gun underneath was not sufficient to put him in possession, constructively or actually. See id. at 66-67.

The district court overruled Lane's objection to the firearm enhancement, finding that the government had tied Sheffield into the conspiracy by presenting evidence that he was an unindicted co-conspirator. See id. at 67, 70. Based on the availability of the weapon under the couch, the district court stated that "constructive possession . . . [was] satisfied." Id. at 68. The district court then stated that the government had "established by a preponderance of the evidence that there [was] a foreseeable connection between the firearm and the offense." Id. at 69-70. The district court sentenced Lane to 168 months of imprisonment and 5

4

years of supervised release.  See id. At 75-76.  This appeal follows.

## II. DISCUSSION

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo."  United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (per curiam) (quotation marks and citation omitted).  "Pursuant to § 2D1.1(b)(1), if a defendant possessed a dangerous weapon during a drug-trafficking offense, his offense level should be increased by two levels."  United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001) (per curiam).  The commentary to § 2D1.1(b)(1) states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1(b)(1), comment. (n.3) (Nov. 2008).  In the context of a conspiracy case, the § 2D1.1(b)(1) enhancement may be applied if the firearm is "found in a place where acts in furtherance of the conspirac[y] took place."  Pham, 463 F.3d at 1246.

The government has the burden to demonstrate the proximity of the firearm to the site of the charged offense by a preponderance of the evidence.  See United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995) (per curiam).  A preponderance of the evidence standard requires the government to present reliable and specific evidence.  See United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995)

5

("Although not as rigorous as the reasonable doubt or clear and convincing standards, the preponderance standard is not toothless.  It is the district court's duty to ensure that the [g]overnment carries this burden by presenting reliable and specific evidence.").  If the government successfully meets its initial burden, the evidentiary burden then shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was "clearly improbable."  Pham, 463 F.3d at 1245 (quotation marks and citation omitted).

The U.S.S.G. § 2D1.1(b)(1) enhancement may be applied to a convicted defendant when a firearm is possessed by a co-conspirator if the government proves by a preponderance of the evidence that: "(1) the possessor of the firearm was a co-conspirator; (2) the possession was in furtherance of the conspiracy; (3) the defendant was a member of the conspiracy at the time of possession; and (4) the co-conspirator possession was reasonably foreseeable by the defendant."  United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir. 1999) (emphasis omitted).  To prove that the possession was in furtherance of the conspiracy, the government need show only that the firearm was present at the site of the charged offense, unless it was "clearly improbable that the weapon was connected with the offense."  United States v. Fields, 408 F.3d 1356, 1359 (11th Cir. 2005) (quotation marks and citation omitted).  Possession may be proved through either actual or constructive

6

possession. See United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005). "Constructive possession exists when a [person] has ownership, dominion, or control over an object itself or dominion or control over the premises in which the object is concealed." Id. (quotation marks and citation omitted).

The government argues that, because the evidence showed that the firearm was present at a place where acts in furtherance of the conspiracy took place, it met its burden, and the burden shifted to Lane to show that a connection between the firearm and the offense was clearly improbable. Such a showing, however, does not discharge the possession requirement set forth in § 2D1.1(b)(1). In cases where we have stated that the presence of the weapon at the site of the charged offense is all that the government needs to show, the defendant's possession of the firearm was clear. See United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998) (affirming a § 2D1.1(b)(1) enhancement when officers found a firearm that belonged to the defendant in a warehouse where the charged conduct took place); United States v. Hansley, 54 F.3d 709, 715-16 (11th Cir. 1995) (affirming a § 2D1.1(b)(1) enhancement when officers found a firearm and other drug-related items in the defendant's home).

When possession of the firearm by the defendant has been at issue before our court, it has generally been the case that a co-conspirator clearly had

possession of the firearm, and the defendant claimed that he should not be responsible for the firearm because he was not the possessor and/or because he was unaware of the firearm. See e.g., United States v. Martinez, 924 F.2d 209, 210 (11th Cir. 1991) (affirming a § 2D1.1(b)(1) enhancement when the possessor of the firearm was charged as a co-conspirator, even though the defendant claimed he was unaware of the firearm) (per curiam); United States v. Otero, 890 F.2d 366, 367 (11th Cir. 1989) (affirming a § 2D1.1(b)(1) enhancement when the defendant's co-conspirator pleaded guilty to possession of a firearm) (per curiam). In those cases, we have applied the analysis set forth in Gallo (or its predecessor, Otero) for applying the enhancement to a defendant when a co-conspirator was the possessor of the firearm. See Gallo, 195 F.3d at 1284. For instance, in Fields, a firearm was found only at a co-conspirator's home. See Fields, 408 F.3d at 1358. Even though we found that the co-conspirator's home was a place where acts in furtherance of the conspiracy took place, we ensured that each condition set forth in Gallo was met before determining that the enhancement could be applied to the defendant. See id. at 1359. The fact that the firearm was found at a place where acts in furtherance of the conspiracy took place established only that one of the four Gallo conditions was met. It did not, by itself, justify the application of the U.S.S.G. § 2D1.1(b)(1) enhancement. See id.

The district court found that Sheffield was a co-conspirator in constructive possession of the firearm and attributed his possession to Lane. This conclusion, however, was based solely on the testimony of Hutson, who admitted that he was not at the trap house at the time of the search. Hutson also conceded that he did not know to whom the firearm belonged. Furthermore, Hutson did not state definitively that Sheffield was involved in the conspiracy. From this evidence, it is not clear whether Sheffield was a distributor for the conspiracy or whether he was simply a buyer who then sold the drugs for his own profit. See United States v. Solomon, 686 F.2d 863, 876 (11th Cir. 1982) ("The relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy . . . [because] [t]here is no joint objective.") (quotation marks and citation omitted). Even if the district court could infer that Sheffield was responsible for the firearm in the couch, Hutson's vague and general testimony was not enough to prove by a preponderance of the evidence that Sheffield was in fact a co-conspirator.

Moreover, even if it could be assumed that Sheffield was a co-conspirator in possession of the firearm, the district court still erred because it did not make a finding with respect to each of the other conditions set forth in Gallo: that the possession was in furtherance of the conspiracy, that Lane was a member of the

9

conspiracy at the time of possession, and that Sheffield's possession was reasonably foreseeable by Lane. See Gallo, 195 F.3d at 1284 (vacating the defendant's sentence and remanding because the district court failed to make a finding regarding the foreseeability of the co-conspirators' possession of the firearms).

## III. CONCLUSION

The only evidence presented to establish Sheffield's role as a co-conspirator and possession of the firearm was the vague and general testimony of Hutson, who was not present at the time of the search. This evidence was not specific enough to prove by a preponderance of the evidence that a co-conspirator was in possession of the firearm. Therefore, the district court clearly erred in applying the enhancement to Lane based on a co-conspirator's possession. Accordingly, we VACATE Lane's sentence and REMAND for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**