[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14921
_____

D.C. Docket No. 4:08-cr-00029-SPM-WCS-14

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY PATRICK TURNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 28, 2013)

Before BARKETT and JORDAN, Circuit Judges, and HALL,* District Judge.

PER CURIAM:

_____

* Honorable J. Randal Hall, United States District Judge for the Southern District of Georgia, sitting by designation.

In 2011, we vacated the sentence imposed on Terry Patrick Turner and remanded for further proceedings. We concluded that the government had failed to show that Mr. Turner himself possessed certain firearms, and as a result there was no basis for assessing a two-level enhancement under USSG § 2D1.1(b)(1). The record was also unclear as to whether the enhancement could be applied based on the possession of firearms by Mr. Turner's co-conspirators. *See United States v. Turner*, 417 F. App'x 880, 882 (11th Cir. 2011).

On remand, the district court again applied the two-level enhancement, and sentenced Mr. Turner to 188 months in prison for conspiring to possess methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 846. Relying on the evidence presented at the initial sentencing hearing, the district court found that Mr. Turner's co-conspirators had possessed firearms in furtherance of the drug conspiracy and that the requirements under *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999), had been met. Mr. Turner now appeals.

Following review of the record, and with the benefit of oral argument, we affirm. In our view, the district court's factual findings on the *Gallo* requirements are not clearly erroneous.

# I

Under § 2D1.1(b)(1), a defendant's sentence can be enhanced for the

possession of a firearm by another person if four requirements are met: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of the possession, *and* (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Gallo*, 195 F.3d at 1284 (11th Cir. 1999).

We review the district court's findings of fact under § 2D1.1 for clear error, and the application of the guidelines to those facts *de novo*. *See Gallo*, 195 F.3d at 1280. A district court's subsidiary *Gallo* findings are factual ones that we review only for clear error. *See, e.g., United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) ("[T]he district court did not clearly err by finding that it was reasonably foreseeable that a firearm would be possessed by a co-conspirator."); *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) ("The district court did not clearly err in finding that [the co-conspirators'] possession of the firearms was in furtherance of their drug conspiracy . . . ."). We will not set aside a factual finding unless we are "left with a definite and firm conviction that a mistake has been committed." *Jones v. Childers*, 18 F.3d 899, 904 (11th Cir. 1994) (citations and internal quotation marks omitted).

## II

In 2009, a jury convicted Mr. Turner for his involvement in a methamphetamine distribution conspiracy in northern Florida. Co-conspirators

Celso and Custodio Guerra supplied the drugs. Mr. Turner financed several methamphetamine purchases from the Guerra brothers through various liaisons, including co-conspirator Jonathan Stephens. The evidence at the initial sentencing hearing indicated that Mr. Turner had provided a rifle to Custodio Guerra, which Mr. Guerra then sold to an undercover Drug Enforcement Administration agent who testified at the hearing. During this transaction, Mr. Guerra also indicated that Mr. Turner had another gun available for sale. Mr. Turner had also provided Mr. Stephens with a firearm, which authorities recovered during Mr. Stephens' subsequent arrest on other charges.

On remand, the district court made the following findings:

The government has demonstrated through reliable evidence that the defendant had a relationship with co-conspirators Guerra and Stephens that involved the exchange of firearms in trafficking in methamphetamine. Guerra and Stephens possessed firearms during the time the defendant was a member of the drug conspiracy. Guerra and Stephens possessed the firearms in furtherance of the conspiracy to protect themselves, their drugs, and their money, during drug transactions. The possession was reasonably foreseeable to the defendant because he provided the firearms to the co-conspirators and the firearms were used for protection during drug transactions that the defendant financed.

R:631 at 7–8. The district court concluded that the enhancement was appropriate based on the co-conspirators' firearm possession.

On appeal, Mr. Turner asserts that the evidence does not support the district court's findings that the gun possession was in furtherance of the conspiracy and

4

that the gun possession was reasonably foreseeable to him. He does not challenge the district court's other subsidiary *Gallo* findings.

**A**

Mr. Turner first argues that the record lacks evidence directly connecting the co-conspirators' possession of firearms to the drug conspiracy. We disagree.

More than mere gun possession is often required to affirm a district court's application of a § 2D1.1(b)(1) enhancement. *See United States v. Stallings*, 463 F.3d 1218, 1221 (11th Cir. 2006) (requiring some nexus between the firearm and the drug crime). To permit an enhancement based on a co-conspirator's firearm possession, that possession must have been "in furtherance" of the conspiracy, a phrase which has been construed to mean that "the firearm helped, furthered, promoted, or advanced" the conspiracy. *See United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) (discussing "in furtherance" in the context of 18 U.S.C. § 924(c)). In Mr. Turner's case, the district court specifically found that the co-conspirators possessed the firearms for the purpose of "protect[ing] themselves, their drugs and their money." This finding, we conclude, was not clearly erroneous.

The record includes testimony from Agent Kevin Whittle, an undercover DEA agent who purchased guns and drugs on various occasions during the conspiracy. Agent Whittle testified that he purchased a Mauser rifle from Mr.

5

Custodio Guerra, and discussed purchasing a .45 semi-automatic handgun from Mr. Guerra. Agent Whittle further testified that Mr. Guerra received both guns from "Pat," who he understood to be Mr. Turner, and that Mr. Guerra discussed his personal practice of being armed during drug transactions. Although Mr. Guerra was not separately armed during his transaction with Agent Whittle, that did not prevent the district court from reasonably inferring that Mr. Guerra generally used guns for protection—including the one he received from Mr. Turner—while selling drugs. After all, the transaction between Mr. Guerra and Agent Whittle was not a drug transaction, and Mr. Guerra may not have needed an additional weapon given that he was carrying the rifle he was selling to Agent Whittle. We do not mean to suggest that the record could not have supported a different finding. All we conclude is that the district court's finding was permissible based on reasonable inferences from Agent Whittle's testimony. *See United States v. Ladson*, 643 F.3d 1335, 1341 (11th Cir. 2011) (noting that factual findings in support of a sentencing enhancement must be affirmed so long as they are plausible based on the record as a whole).

Mr. Turner points out that no drugs were exchanged during the particular transaction between Agent Whittle and Mr. Guerra. This argument, however, misses the mark because evidence indicating a general practice of carrying guns during drug transactions can support an enhancement for possession of a firearm.

6

*See United States v. Slade*, 631 F.3d 185, 189 (4th Cir. 2011) (affirming a § 2D1.1(b)(1) enhancement based, in part, on testimony that the defendant "always carried guns" during drug trafficking); *United States v. Alred*, 144 F.3d 1405, 1420 (11th Cir. 1998) (affirming a § 2D1.1(b)(1) enhancement based on a defendant's gun possession and co-conspirator's testimony that guns were "laying everywhere" during a drug transaction). The testimony about Mr. Guerra's stated practice of carrying guns when selling drugs and the evidence suggesting a history of drugs and guns associated with Mr. Turner and his co-conspirators reasonably support the district court's finding that Mr. Guerra used firearms for protection.

This was not, moreover, the only evidence supporting the enhancement. As noted earlier, Mr. Turner gave another co-conspirator, Mr. Stephens, at least one firearm in an apparent "gun swap." And Mr. Turner also gave money to Mr. Stephens on several occasions to purchase methamphetamine from Mr. Guerra. Although the record is unclear regarding the exact timing and sequence of these events, the district court could reasonably find that Mr. Turner armed Mr. Stephens with a gun while Mr. Stephens carried out drug transactions financed by Mr. Turner. Given the sometimes "frequent and overpowering connection" between firearms and drug trafficking, *see United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986), the district court did not clearly err in concluding that the firearms were possessed in furtherance of the conspiracy.

**B**

Mr. Turner also contends that his co-conspirators' firearm possession was not reasonably foreseeable to him. We find this argument unpersuasive given that Mr. Turner himself supplied those co-conspirators (Mr. Guerra and Mr. Stephens) with firearms. "[G]uns are a tool of the drug trade," *Cruz*, 805 F.2d at 1474, and the district court could reasonably find that it was reasonably foreseeable to Mr. Turner that co-conspirators would possess firearms he himself provided in furtherance of the conspiracy. *See Pham*, 463 F.3d at 1246. Although Mr. Turner argues that the firearm sales and the drug sales were separate and unrelated transactions, the district court rejected this theory, finding that the conspiracy "involved the exchange of firearms in the trafficking of methamphetamine." That finding, on this record, was not clearly erroneous.

**III**

In sum, the district court did not clearly err in applying a § 2D1.1(b)(1) enhancement for the co-conspirators' possession of firearms. We do not, of course, adopt any *per se* rule that the act of selling a gun to a co-conspirator during the course of a drug conspiracy automatically or necessarily gives rise to a sentencing enhancement. As we have noted elsewhere, "a similar fact pattern may on occasion give rise to two reasonable and different constructions." *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (*en banc*). Our ruling today merely

reflects the deference given to a district court's factual determinations regarding the connection, if any, between firearms and a drug conspiracy. *See United States v. Nino*, 967 F.2d 1508, 1514 (11th Cir. 1992) (noting "the deference due district courts' factual determinations for sentencing purposes").

Mr. Turner's sentence is affirmed.

**AFFIRMED.**

BARKETT, Circuit Judge, dissenting:

Although the district court's findings of fact under § 2D1.1 are entitled to deference and may only be reversed for clear error, it is nevertheless necessary that there exist some evidence of a <u>connection</u> between the defendant's possession of a firearm and the charged drug trafficking offense to apply the sentencing enhancement.  <u>See</u> <u>United States v. Stallings</u>, 463 F.3d 1218, 1220 (11th Cir. 2006) ("[T]he government must show that the firearm had 'some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.'" (<u>citing</u> <u>United States v. Timmons</u>, 283 F.3d 1246, 1251 (11th Cir. 2002)).

Whether the evidence here was sufficient to establish this connection is a close call because the charged crime and Turner's gift or sale of firearms to others occurred during the same approximate time frame.  Therefore, it is easy to speculate that the drugs and firearms might have been connected.  However, speculation is different from a reasonable legal inference based on specific evidence, which is what is required to support a sentencing enhancement.[1]  <u>See</u> <u>United States v. Newman</u>, 614 F.3d 1232, 1238 (11th Cir. 2010) ("A district court's factual findings used to support a sentencing enhancement must be based

---

[1] Black's Law Dictionary defines "inference" as a "conclusion reached by considering other facts and deducing a logical consequence from them" and "speculation" as the "act or practice of theorizing about matters over which there is no certain knowledge."  <u>Black's Law Dictionary</u> (9th ed. 2009).

10

on reliable and specific evidence and cannot be based on speculation."); United States v. Cataldo, 171 F.3d 1316, 1321 (11th Cir. 1999) ("[C]ourts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." (internal quotation omitted)).

Here there is no evidence whatsoever either that Turner's co-conspirators possessed firearms during any acts that were part of the charged drug conspiracy, or that they possessed firearms to be used in furtherance of the conspiracy, or that Turner could have reasonably foreseen that his co-conspirators would possess firearms in furtherance of the conspiracy. To reach the district court's conclusion that there existed a nexus between the co-conspirators' possession of firearms and the charged drug conspiracy requires stacking numerous inferences upon each other. Doing so, however, makes the link between the facts and conclusion so tenuous that it falls on the side of speculation, not reasonable inference.

The total basis for the district court's conclusion that a connection was proven consisted of: (1) co-conspirator Jonathan Stephens's possession of a firearm, which he said he obtained from Turner, during a separate and unrelated arrest; (2) co-conspirator Custodio Guerra's possession of a firearm, which he said he obtained from Turner, in a meeting with an undercover agent; and (3) Guerra's statement to the agent that he generally carried a gun during drug transactions.

11

However, with reference to Stephens, the record does not indicate the circumstances of his arrest or even that it was drug-related. In fact, there is no evidence at all that Stephens possessed the firearm during any drug transaction or that the possession was in any other way related to drugs. Although the government presented evidence that Stephens was engaged in drug transactions around the same general time that he possessed the firearm, "the mere fact that a drug offender possesses a firearm does not necessarily give rise to the firearms enhancement. The government must show some nexus beyond mere possession between the firearms and the drug crime." Stallings, 463 F.3d at 1221. It has failed to do so here. To infer from this record that Stephens possessed firearms in furtherance of the charged drug conspiracy is to speculate that a drug offender who possesses a gun during a separate offense—and not necessarily a drug offense— will always possess a gun in every other offense in which he is involved.

The evidence is also insufficient to establish that Guerra possessed a firearm to be used in furtherance of the conspiracy charged. First, only two guns were mentioned during the conversation between Guerra and Agent Whittle. The first was a .45 handgun, which Guerra said he could potentially obtain from Turner to sell to Whittle. However, there was no evidence that Guerra ever actually possessed that handgun. Whittle admitted during the sentencing hearing that the sale of the .45 handgun never occurred and that he did not know whether the

12

handgun actually existed. The only other gun involved was the Mauser rifle that Guerra did sell to Whittle. However, while Whittle purchased drugs from Guerra on other occasions, there is no evidence that Whittle's purchase of the rifle occurred in conjunction with the charged drug conspiracy.

Second, even though Guerra advised Whittle that he is generally armed during drug transactions, Whittle admitted that he did not know whether Guerra was armed and that Guerra denied carrying a firearm during their conversation. The government presented no other evidence that Guerra was ever armed during a drug transaction, let alone that he used the specific firearm at issue for protection during the charged drug conspiracy. On the contrary, the only evidence regarding the rifle that Turner gave to Guerra indicates that Guerra possessed the rifle in order to sell it independently of the relevant drug conspiracy. In light of this lack of evidence, I believe it is speculation, not reasonable inference, to conclude that Guerra possessed firearms, including the one he received from Turner, in furtherance of the drug conspiracy charged.[2]

_____

[2] The majority contends that the district court's inference was reasonable "because evidence indicating a general practice of carrying guns during drug transactions can support an enhancement for possession of a firearm." However, the cases the majority cites to support this proposition contained substantially more evidence of a nexus between drugs and firearms than is present here. In United States v. Slade, there was testimony from the defendant's co-conspirator that the defendant "always carried guns" during drug transactions, testimony from a state detective familiar with the investigation confirming that the co-conspirator's statements were truthful and reliable, evidence that the defendant had been convicted of gun offenses during the course of the drug conspiracy, and evidence that the defendant shot known drug dealers. 631 F.3d 185, 189 (4th Cir. 2011). Here, the only evidence tending to support a nexus between the firearms and drugs is Guerra's unsupported statement regarding his practice of carrying guns

In short, while the evidence is certainly sufficient to support a reasonable inference that Turner gave firearms to known drug dealers, it does not support the requisite inference that these individuals possessed the firearms obtained from Turner in furtherance of the specific drug conspiracy charged. A sentence of approximately 37 additional months of imprisonment[3] should not be based on the presumption that whenever a defendant is contemporaneously involved in both drug and firearms transactions the two will always necessarily be connected. It is beyond question that one can be involved in unrelated crimes at the same time.

There is no evidence on this record connecting the firearms to the drug transactions apart from the temporal proximity between the drug and firearm sales. To jump from this temporal proximity to the conclusion that Turner's co-conspirators possessed firearms in furtherance of the charged conspiracy and that Turner could have reasonably foreseen their possession requires too great of an inferential leap. Accordingly, even in light of the deferential standard of review awarded to the district court's findings of fact, I believe the district court clearly

---

during drug transactions, which notably he made while trying to convince a potential buyer of the usefulness of guns. In United States v. Alred, a co-conspirator testified that there were guns "laying everywhere" during a marijuana transaction. 144 F.3d 1405, 1420 (11th Cir. 1998). Here, there was no evidence that guns were present during any drug transactions.

[3] Without the sentencing enhancement, Turner faced a guidelines sentencing range of 151 to 188 months of imprisonment. U.S. Sentencing Guidelines Manual ch.5, pt. A, sentencing table (2009). The application of the sentencing enhancement raised Turner's guidelines range to 188 to 235 months. Id. The district court sentenced Turner to the low-end of the guidelines range.

14

erred in applying the § 2D1.1(b)(1) sentencing enhancement based on co-conspirator possession.