[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12488
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60143-JIC-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SONYINI CLAY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 14, 2014)

Before CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

Sonyini Clay appeals her 121-month sentence for conspiracy to defraud the United States government by filing false claims, in violation of 18 U.S.C. § 286, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  Clay now contends that her sentence was both procedurally and substantively unreasonable.

## I. Factual and Procedural History

From December 2010 to June 2012, Clay and her two codefendants, Chante Mozley and Alci Bonannee, filed around 2,000 fraudulent income tax returns using stolen identities.  They filed the returns using Mozley's Electronic Filing Identification Number[1] and requested that the tax refunds be deposited into bank accounts they controlled.  In total, Clay and her codefendants sought about $11 million in refunds.  The IRS ultimately paid out over $4 million of the requested funds, a substantial portion of which was never recovered.

In August 2012 a federal grand jury returned a 43-count indictment charging Clay and her codefendants with, among other things, conspiracy to defraud the United States by filing false income tax returns, in violation of 18 U.S.C. § 286 (Count 1); filing and obtaining payments for false income tax returns, in violation of 18 U.S.C. § 287 (Counts 29–33); wire fraud, in violation of 18 U.S.C. § 1343 (Counts 34–38); and, for Clay only, aggravated identity theft, in violation of 18

---

[1] An Electronic Filing Identification Number is a code that the IRS gives to tax preparers to enable them to electronically file tax returns.  See IRS Webpage "FAQs About Electronic Filing ID Numbers," http://www.irs.gov/Tax-Professionals/e-File-Providers-&-Partners/FAQs-About-Electronic-Filing-ID-Numbers-(EFIN) (Dec. 19, 2013).

2

U.S.C. § 1028A(a)(1), (2) (Counts 39–43).  Clay initially pleaded not guilty to these charges, but she changed course on the first day of trial and — without a plea agreement — pleaded guilty to Counts 1 and 40.  The district court dismissed the remaining counts against her.

On Count 1, the conspiracy charge, the presentence investigation report (PSR) calculated a base offense level of six.  See United States Sentencing Guidelines § 2B1.1(a)(2) (Nov. 2012).  The PSR increased that offense level by 20 because the intended loss amount for the offense was between $7 million and $20 million, id. § 2B1.1(b)(1)(K), and it added an additional 6 levels because the offense involved 250 or more victims, id. § 2B1.1(b)(2)(C).  After subtracting two levels for acceptance of responsibility, id. § 3E1.1(a), the PSR calculated a total offense level of 30.  That offense level, coupled with Clay's criminal history category of I, yielded a guidelines range of 97 to 120 months imprisonment on the conspiracy charge.  The aggravated identity theft charge carried a mandatory consecutive sentence of 24 months.  18 U.S.C. § 1028A(a)(1).  Neither party objected to the PSR.

Although she failed to object to the PSR, Clay did file a motion for a "downward departure,"[2] in which she argued that she should not be held

---

[2] Although Clay designated the motion as one for a downward departure, its content indicates that she was actually seeking a downward variance.  The difference between the two is that a downward departure implicates the calculation of the guidelines range while a downward

responsible for the full intended loss amount.  In support of that argument, Clay

pointed to the disparity between intended loss and actual loss and argued that she

played a smaller role in the fraudulent scheme than her codefendants.  She also

asked the court to consider that she has a child with special needs.  The district

court denied Clay's motion and sentenced her to, among other things, 97 months

imprisonment on Count 1 and a consecutive 24-month term on Count 40.  Clay

now appeals her sentence.

## II.  Procedural Reasonableness

Clay first contends that her sentence was procedurally unreasonable because

the district court (1) failed to adequately explain her sentence as required by 18

U.S.C. § 3553(c)(1); (2) imposed an unwarranted 6-level enhancement for more

than 250 victims under U.S.S.G. § 2B1.1(b)(2)(C); and (3) erroneously imposed a

20-level enhancement under § 2B1.1(b)(1)(K) for a loss amount greater than $7

million but less than $20 million.

## A.  Explanation for the Sentence

A district court is required to "state in open court the reasons for its

imposition of the particular sentence," and, if the sentence is a guidelines sentence,

its "reason for imposing a sentence at a particular point within the [advisory

---

variance invokes the district court's discretion to impose a sentence below the calculated
guidelines range based on the factors set forth in 18 U.S.C. § 3553(a).  See United States v.
Amedeo, 487 F.3d 823, 830 (11th Cir. 2007).

guidelines] range." 18 U.S.C. § 3553(c)(1). If the court fails to adequately explain its chosen sentence, it has committed procedural error. Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007) (instructing appellate courts to ensure that "the district court committed no significant procedural error, such as . . . failing to adequately explain the chosen sentence"). We review de novo a district court's compliance with § 3553(c)(1), even if the defendant did not raise that objection in the district court. United States v. Bonilla, 463 F.3d 1176, 1181 (11th Cir. 2006).

Although the law obliges district courts to state the reasons for choosing a particular sentence, "a lengthy discussion is not required in the typical case." United States v. Flores, 572 F.3d 1254, 1270 (11th Cir. 2009). All that is required is that the sentencing judge "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468 (2007). To meet that standard, the sentencing court need not discuss or explicitly state on the record that it has considered each § 3553(a) factor as long as it acknowledges that it generally considered those factors and the defendant's arguments. See United States v. Scott, 426 F.3d 1324, 1329–30 (11th Cir. 2005) ("[T]he district court explicitly acknowledged that it had considered [the defendant's] arguments at sentencing and that it had considered the factors set forth in § 3553(a). This statement alone is sufficient in post-Booker sentences.");

5

see also Flores, 572 F.3d at 1271 (holding a sentence to be procedurally reasonable where the district court "explicitly stated that it considered the § 3553(a) factors").

The district court's explanation in this case was adequate. The court stated on the record that it considered:  (1) the parties' statements; (2) the PSR, which contained the advisory guidelines sentencing options; (3) each of the 18 U.S.C. § 3553(a) sentencing factors; and (4) Clay's motion for a downward departure or variance. The court's explanation was thus sufficient to demonstrate that it had considered the parties' arguments and had a reasoned basis for exercising its own legal decision-making authority. See Rita, 551 U.S. at 356, 127 S.Ct. at 2468; Flores, 572 F.3d at 1270–71.

### B. Enhancements for Multiple Victims and Loss Amount

Clay contends that the district court erred by applying a 6-level enhancement for committing an offense that involved 250 or more victims and by applying a 20-level enhancement for causing an intended loss between $7 million and $20 million. See U.S.S.G. § 2B1.1(b)(2)(C), (b)(1)(K).  She asserts that she cannot be held responsible for the conduct of her co-conspirators because the district court failed to make any of the "particularized findings" that she believes are required and because the PSR did not, in her view, identify a law enforcement finding that she victimized that many people. Because she did not raise those issues before the

6

district court, we review the court's decision of them only for plain error.  United States v. Hoffman, 710 F.3d 1228, 1231–32 (11th Cir. 2013).

Under the sentencing guidelines, a defendant convicted of conspiracy is responsible for "all reasonably foreseeable acts and omissions of [her co-conspirators] in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense," in preparation for the offense, or in trying to escape detection for that offense.  U.S.S.G. § 1B1.3(a)(1)(B).  In other words, a defendant like Clay is responsible for the conduct of her co-conspirators only if that conduct was both (1) in furtherance of the jointly undertaken criminal activity and (2) reasonably foreseeable in connection with that criminal activity.  Id., cmt. n.2.  We have also held that, "to determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant."  United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003) (quotation marks omitted).  Only then should the court consider reasonable foreseeability and whether the conduct was in furtherance of the conspiracy.  See U.S.S.G. § 1B1.3, cmt. n.2; see also United States v. Gallo, 195 F.3d 1278, 1281 (11th Cir. 1999) (noting that "both § 1B1.3(a)(1)(B) and its commentary unambiguously direct that sentence enhancements for co-conspirator conduct will be limited to those acts which are reasonably foreseeable").

Relying on the application notes to the sentencing guidelines and our Hunter decision, Clay argues that the district court committed reversible error by failing to make particularized findings about the scope of her involvement in the conspiracy. She casts her challenge as a "procedural" one, insisting that the court was required to make particularized findings, but she ultimately seeks to retract facts she admitted (by failing to object to) at sentencing.  This is a crucial distinction between her situation and the authority she cites in which we have required particularized findings.  In Hunter, for example, the government and the defendants both filed objections to the PSR regarding the extent to which the defendants were responsible for the actions of other members of the conspiracy. 323 F.3d at 1317.  And in Gallo, which Clay does not cite, the defendant argued at sentencing that a "reasonable foreseeability" finding was required to hold her responsible for her co-conspirators' possession of firearms.  195 F.3d at 1280.  We held that the district court's failure to make particularized findings in those cases required remanding for resentencing.  Id. at 1284; Hunter, 323 F.3d at 1323.  But because the "holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision," United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (quotation marks omitted), Hunter and Gallo do not control this case.[3]

---

[3] We also note that the particularized finding "requirement" is not as absolute as Clay

8

In this case, there were no objections to the PSR, no trial, and no real record on which to base the findings Clay now claims are required. As the prosecutor noted, it was "[h]ard to get good information in this case because not a lot of people [we]re talking." But the information the court did have justified its application of those two enhancements. The district court could have permissibly relied on any of the following pieces of information: (1) undisputed statements in the PSR that "the offense involved 250 or more victims" and that Clay herself was "responsible for an intended tax loss between $7,000,000 and $20,000,000;" (2) another undisputed statement in the PSR asserting that Clay and her co-conspirators filed approximately 1,175 fraudulent tax returns in 2010 and 649 fraudulent returns in 2011;[4] (3) Clay's counsel's admission at sentencing that she had personally filed about "300 or so" of the roughly 2,000 returns; and (4) counsel's statement, when asked whether he objected to the district court's loss calculation, that he "had to live with" that calculation because the PSR was "using the intended loss."

---

would have us believe. We have excused a sentencing court's failure to make such findings where the evidence presented at trial supported the court's imposition of an enhancement based on the acts of others. See United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002) ("[A] sentencing court's failure to make individualized findings regarding the scope of the defendant's activity is not grounds for vacating a sentence if the record supports the court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant.").

[4] These approximate figures were calculated based on the PSR's statement that 97% of the 1,211 returns the conspirators filed for tax year 2010 had "fraudulent indicators" and that at least 65% of the 998 returns they filed for tax year 2011 had such indicators.

9

Because Clay neglected to object to the statements in the PSR, she admitted them as fact for sentencing purposes.  See United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).  We have held that a defendant's "failure to object to conclusory statements in the [PSR] renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence."  United States v. Aguilar-Ibarra, 740 F.3d 587, 592 (11th Cir. 2014) (quotation marks omitted) (emphasis added).   Thus, the district court here was entitled to rely on the undisputed statements in the PSR that Clay was responsible for an intended loss between $7 million and $20 million and that her offense involved more than 250 victims.  However conclusory those statements were, the district court was not required to make any additional factual findings when those undisputed statements were before it, and the court did not plainly err in applying enhancements on the basis of them.

For all of these reasons, we conclude that the district court did not procedurally err in sentencing Clay.[5]

_____

[5] Clay also argues that our decision in United States v. Jones, 899 F.2d 1097 (11th Cir. 1990), abrogated on other grounds by United States v. Morrill, 984 F.3d 1136 (11th Cir. 1993), requires resentencing in this case. In Jones we held that a district court should, after imposing a sentence, "elicit fully articulated objections . . . to the court's ultimate findings of fact and conclusions of law." Id. at 1102. Clay contends that the district court did not comply with Jones because the court, after asking whether there were any objections to the sentence, "moved forward to advise the defendant regarding the right to appeal" without giving the parties the opportunity to respond. The government concedes that after asking for objections, the district court moved on "[w]ithout pausing." However, we have not always vacated a sentence where a district court has not complied with Jones. See United States v. Cruz, 946 F.2d 122, 124 n.1

III. Substantive Reasonableness

Clay also contends that her sentence is substantively unreasonable under the totality of the circumstances. United States v. Turner, 626 F.3d 566, 573 (11th Cir. 2012). A district court must impose a sentence that is "sufficient, but not greater than necessary," to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational . . . training" or correctional treatment. 18 U.S.C. § 3553(a)(2). Section 3553(a) contains a number of additional factors that a court must take into account when imposing a sentence.[6] The district court must consider all of the § 3553(a) factors, but it may attach more weight to some factors than others. See United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009); United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (noting that the weight given to any one of these factors is "committed to the sound discretion of

_____

(11th Cir. 1991) (excusing the district court's violation of Jones where the record was nonetheless sufficient to enable appellate review). More importantly, the record shows that Clay had an opportunity to object and raise additional issues when the court paused a few statements after it had elicited objections to the sentence. At that time, Clay's counsel requested that Clay be permitted to self-surrender to custody at a later date. That request indicates that counsel did have the opportunity to object to the court's sentence after it was announced, even if the opportunity did not come immediately after the court explicitly elicited objections.

[6] Those factors include: (1) the nature and circumstances of the offense, (2) the defendant's history and characteristics, (3) the kinds of sentences available, (4) the applicable sentencing guidelines range, (5) pertinent policy statements of the Sentencing Commission, (5) the need to provide restitution to any victims, and (6) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1), (3)–(7).

11

the district court") (quotation marks omitted).  A district court errs if it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted).

Clay argues that her 121-month sentence is substantively unreasonable because the district court "appeared to rely solely on the guideline range" and the need for deterrence while ignoring relevant factors such as her history, characteristics, and the role she played in the conspiracy.  Clay also points out that she received a sentence three times longer than that of co-conspirator Chante Mozley, creating an unwarranted sentencing disparity.

We note at the outset that the district court sentenced Clay at the bottom of her guidelines range.  Her advisory guidelines range on the conspiracy charge was 97 to 120 months, and the aggravated identity theft charge carried a mandatory consecutive term of two years imprisonment.  See 18 U.S.C. § 1028A.  Thus, Clay's 121-month sentence represents 97 months for conspiracy (the bottom of the guidelines range) and an additional 24 months for identity theft.  Although we do not automatically presume the reasonableness of a sentence falling within the guidelines range, "we ordinarily expect such a sentence to be reasonable." United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (quotation marks and ellipsis

12

omitted).  Moreover, we will not reweigh the relevant § 3553(a) factors and will not "remand for re-sentencing unless the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence outside the range of reasonable sentences." United States v. Langston, 590 F.3d 1226, 1237 (11th Cir. 2009).  The district court did not commit such an error in this case.

Clay and her codefendants orchestrated a very serious and harmful scheme. They filed around 2,000 fraudulent tax returns, causing an actual loss of about $4 million and an intended loss of $11 million.  The sentence the court imposed reflects the seriousness of this offense and will serve as a deterrent to others.  See 18 U.S.C. § 3553(a)(2)(A)–(B).  It was within the advisory guidelines range.  See id. § 3553(a)(4).  The district court considered other factors as well.   The court stated on the record that it had considered all of the § 3553(a) factors, and, by entertaining Clay's motion for a downward variance, it necessarily considered that (1) the actual loss amount was less than the intended loss amount, (2) Clay received very little money from the scheme, (3) her role was "so minimal compared to the other two defendants," and (4) she has a special needs child for whom she cares.  All of these considerations are relevant to the § 3553(a)(1) sentencing factor — "the nature and circumstances of the offense and history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1) .  The district court permissibly exercised its discretion to attach more weight to the aggravating

factors than to any of the potential mitigating factors Clay relies on now.  Shaw, 560 F.3d at 1237 (11th Cir. 2009) ("The district court . . . is permitted to attach 'great weight' to one factor over others.") (quoting Gall, 552 U.S. at 57, 128 S.Ct. at 600).

Clay's claim of an unwarranted sentencing disparity is also meritless.  She notes that her codefendant Chante Mozley, the woman who provided the Electronic Filing Identification Number used in the scheme, was sentenced to only 42 months imprisonment.  While that is nearly three times less than Clay's sentence, the comparison is inapt because the two defendants are not similarly situated.  See United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009) (rejecting claim of sentencing disparity because the defendants "[we]re not similarly situated"); see also 18 U.S.C. § 3553(a)(6) (instructing sentencing courts about "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct") (emphasis added).  Unlike Clay, Mozley pleaded guilty to only one count and did so thirteen days in advance of trial pursuant to a plea agreement with the government.  She also cooperated with the government and was granted a reduction to her sentence under U.S.S.G. § 5K1.1 as a result.  Clay on the other hand pleaded guilty to two counts on the day that trial began and did so without a plea agreement or any reduction for cooperation.  "A well-founded claim of disparity . . . assumes that apples are being

compared to apples," and that is not the case for Clay and Mozley.  United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009).  It is telling that Clay does not compare her sentence to that of codefendant Alci Bonannee, who was sentenced to a total of 317 months following trial.[7]

Clay's sentence was both procedurally and substantively reasonable and the district court's sentence is **AFFIRMED**.

---

[7] In its brief, the government claims that Bonannee's sentence was only 240 months, but her criminal judgment sets forth a total prison term of 317 months.  The difference does not matter for present purposes.