[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14113
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cr-00558-VMC-AEP-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALVARO VIERA-GOMEZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 12, 2014)

Before HULL, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Alvaro Viera-Gomez, a federal prisoner, appeals his 168-month sentence after pleading guilty to conspiracy to possess and possession of a controlled substance with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States. Mr. Viera-Gomez argues that the district court erred in finding that he was not entitled to a mitigating role reduction under U.S.S.G. § 3B1.2 and that the district court erred in applying a two-level enhancement under U.S.S.G. § 2D1.1 due to a co-defendant's possession of a firearm. Mr. Viera-Gomez also challenges the reasonableness of his sentence. We affirm.

## I

On December 6, 2012, two go-fast vessels, the *Cayos Tour* and the *Cayos Tour 2*, each with four crew members aboard, departed from Honduras to receive large quantities of cocaine from a Panamanian ship in international waters (approximately 18 miles off the coast of Honduras). Mr. Viera-Gomez was a member of the four-man crew on the *Cayos Tour 2*. Following the offload, Marvin Losano-Armijo, a crew member of the *Cayos Tour*, realized that the amount of cocaine transferred was short of the agreed-upon quantity and, after making a phone call, retrieved a handgun and discharged several rounds at the Panamanian ship.

2

The U.S. Coast Guard spotted the two go-fast vessels, observed the offload and the gunfire, and dispatched two helicopters to the area. The two go-fast vessels fled, jettisoning packages into the water. Coast Guard personnel eventually boarded both go-fast vessels and arrested Mr. Viera-Gomez and the seven other crew members. Upon search of the debris field left by the two boats, Coast Guard personnel recovered 22 bales containing 550 kilograms of cocaine that had been jettisoned from the *Cayos Tour 2*. The cocaine jettisoned from the *Cayos Tour* was not recovered.

Mr. Viera-Gomez pled guilty to two charges: conspiracy to possess, with intent to distribute, five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), (b) and 21 U.S.C. § 960(b)(1)(B)(ii); and possession, with intent to distribute, five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii).

The presentence investigation report (PSI) recommended that Mr. Viera-Gomez's total offense level be established at 35 and his criminal history score at I, yielding an advisory guidelines range of 168 to 210 months' imprisonment. The guidelines calculation included a two-level increase under U.S.S.G. § 2D1.1(b)(1) because one of Mr. Viera-Gomez's co-defendants had

possessed a firearm, *see* PSI at ¶ 23, and did not include any adjustment for Mr. Viera-Gomez's role in the conspiracy. *Id.* at ¶ 26. Mr. Viera-Gomez objected to not receiving a two-level reduction for his minor role and to receiving the two-level enhancement for possession of a firearm, but did not object to the underlying facts in the PSI. He reiterated these arguments in his sentencing memorandum as well as at his sentencing hearing. *See* D.E. 234 at 1-3; D.E. 289 at 30-36.

After explaining that it had considered his "very difficult childhood," as well as the circumstances of the case and the damage caused by the illegal drug trade in the United States, the district court sentenced Mr. Viera-Gomez within the advisory guidelines range to a total of 168 months' imprisonment and five years of supervised release. *See* D.E. 289 at 47, 50-51.

## II

We review a district court's determination of a defendant's role in the offense for clear error. *See United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). We also review for clear error a district court's findings of fact under U.S.S.G. § 2D1.1(b)(1). *See United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999). We review the reasonableness of a district court's sentence, imposed after consulting the advisory guidelines and considering

the factors set forth in 18 U.S.C. § 3553(a), for an abuse of discretion. *See United States v. Victor*, 719 F.3d 1288, 1291 (11th Cir. 2013).

## III

Mr. Viera-Gomez argues that he should have received either a two-level or four-level reduction in the offense level for his role as a minor or minimal participant. Specifically, he claims that his role was significantly less than the roles of other participants because he did not know the type or quantity of drugs involved, he handled only a very small amount of drugs, and his role was simply to hold the rope that tethered the boats together while the drugs were being offloaded.

As a general matter, § 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, n.3(A). When determining whether a mitigating role adjustment is warranted, we look "first [to] the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in the relevant conduct." *De Varon*, 175 F.3d at 940. "Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." *Id.* at 944.

5

Mr. Viera-Gomez has not established that the district court clearly erred in declining to apply a mitigating role adjustment. He was one of only eight crewmembers on the two go-fast vessels and was held accountable only for the quantity of cocaine that was recovered from the boat on which he had been traveling. Therefore, the conduct of others in any broader conspiracy has little bearing on the assessment of Mr. Viera-Gomez's role here. Additionally, we have held that "the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct." *Id.* at 943. Mr. Viera-Gomez was one of four crewmembers on the *Cayos Tour 2*, from which 550 kilograms of cocaine was recovered. Given the amount of the drugs and his actions in helping transport them, it was not clear error for the district court to find that Mr. Viera-Gomez was not a minor or minimal participant.

Mr. Viera-Gomez also argues that the district court erred in applying a two-level increase at sentencing under U.S.S.G. § 2D1.1(b)(1) for his co-defendant's possession of a firearm. Mr. Viera-Gomez argues that it was not reasonably foreseeable to him that his co-defendant, Mr. Losano-Armijo, would have a firearm because he was on a different go-fast vessel than Mr. Losano-Armijo, he was not aware of the presence of the firearm, he had never met Mr. Losano-Armijo, and he knew very little about the specifics of the operation.

6

For a § 2D.1.1(b)(1) firearm enhancement to be applied based on a co-conspirator's possession, "the government must prove by a preponderance of the evidence: (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of the possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Gallo*, 195 F.3d at 1284 (emphasis omitted). Recognizing the "frequent and overpowering connection between the use of firearms and narcotics traffic," we have found it is "reasonably foreseeable that one co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs." *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006). Indeed, we have "further upheld application of the [§] 2D1.1(b)(1) enhancement even where defendants claim they were unaware of the firearm possession." *Id.* (citing *United States v. Martinez*, 924 F.2d 209, 210 (11th Cir. 1991)).

Although Mr. Viera-Gomez objected to the two-level increase for presence of a firearm, he did not object to any of the factual information set forth in the PSI, and therefore admitted those facts for consideration during sentencing. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."). The facts in Mr. Viera-Gomez's PSI demonstrated that,

7

after the offloading of at least 550 kilograms of cocaine onto the two go-fast vessels, Mr. Losano-Armijo fired shots at the Panamanian ship that had delivered the cocaine. *See* PSI at ¶¶ 11, 13-14. It is clear, therefore, that Mr. Losano-Armijo was a co-conspirator, that the firearm possession was in furtherance of the conspiracy, and that Mr. Viera-Gomez was a member of the conspiracy at the time of the incident. Additionally, the conspiracy involved a large amount of drugs, making it reasonably foreseeable that a co-conspirator would possess a gun. Accordingly, Mr. Viera-Gomez has not established that the district court clearly erred in applying the two-level firearm enhancement.

Finally, Mr. Viera-Gomez, in arguing that the district court erred by declining to vary downward from the advisory guidelines, appears to challenge the reasonableness of his sentence. *See* Appellant's Br. at 10-12. The party who challenges a sentence bears the burden of establishing that the sentence is unreasonable in light of the record and the factors in 18 U.S.C. § 3553(a). *See United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Mr. Viera-Gomez has not met his burden of showing that the district court abused its discretion in imposing his sentence. In reviewing a defendant's sentence, we must first ensure that the district court committed no significant procedural error. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Here, the district court reviewed the PSI, heard the parties' arguments, and considered the advisory

8

guideline range and the § 3553(a) factors. And, as discussed above, the court did not err in the application of the advisory guidelines. The district court therefore imposed a procedurally reasonable sentence.

Assuming that the district court's sentencing decision is procedurally sound, we then—taking into account the totality of the circumstances—consider the substantive reasonableness of the sentence. *See id.* Mr. Viera-Gomez's sentence was also substantively reasonable. His convictions involved the trafficking of a large amount of narcotics, crimes which were made more dangerous by the presence of a firearm. Although Mr. Viera-Gomez's childhood and the poverty in which he lived could have weighed in favor of a lesser sentence, the sentence imposed was not substantively unreasonable. The total sentence of 168 months' imprisonment is at the low end of the guideline range, and therefore, is one we expect to be reasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) ("when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one"). Additionally, Mr. Viera-Gomez's total sentence is well below the statutory maximum penalty of life. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (finding reasonable a defendant's sentence that was "well below" the maximum sentence available under statute). Considering the § 3553(a) factors and the totality of the

circumstances, Mr. Viera-Gomez's total sentence was substantively reasonable, and the district court did not abuse its discretion.

## IV

Because the district court did not err in declining to apply a mitigating role adjustment or in applying a two-level firearms enhancement, and because Mr. Viera-Gomez's total sentence was substantively reasonable, we affirm.

**AFFIRMED.**